1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                          **DISTRICT OF ARIZONA**
10

| | |
|---|---|
| 11 **LAURIE MILLER, BRIAN DIMAS,** | ) |
| **KIM MILLS, ANTHONY SOZA,** | ) |
| 12 **BRUCE CAMPBELL, KELLIE** | ) **2:13-cv-1419 JWS** |
| **BOWERS, TIM HUNTER, BRIAN** | ) |
| 13 **SAYLOR, MICHAEL SCHAMADAN,** | ) |
| **INDIVIDUALLY AND AS** | ) **ORDER AND OPINION** |
| 14 **REPRESENTATIVE OF THE ESTATE** | ) |
| **OF HIS WIFE, BRANDI SCHAMADAN,** | ) |
| 15 | ) |
| **Plaintiffs,** | ) **[Re: PRELIMINARY ORDER]** |
| 16 | ) |
| **vs.** | ) |
| 17 | ) |
| **YORK RISK SERVICES GROUP,** | ) |
| 18 | ) |
| **Defendant.** | ) |
| 19 | ) |

20              **I.  NATURE OF THIS ORDER**

21         In this order, the court sets out its preliminary views on the motion at docket 8.

22  The purpose of the order is to assist the parties in preparing for oral argument on the

23  motion.  The court will set the time for the oral argument during the planning and

24  scheduling conference which is to take place on December 11, 2013.

25         This order does **not** authorize the filing of any additional briefing.  After hearing

26  oral argument, the court may adopt this order in whole, or in part, or enter a different

27  order addressing the motion at docket 8.

28

## II.  MOTION PRESENTED

At docket 8 defendant York Risk Services Group ("Defendant") moves to dismiss the complaint filed by plaintiffs Laurie Miller, Brian Dimas, Kim Mills, Anthony Soza, Bruce Campbell, Kellie Bowers, Tim Hunter, Brian Saylor, and Michael Schamadan, individually and as representative of the estate of his wife, Brandi Schamadan, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for which relief can be granted.  Plaintiffs respond at docket 10.  Defendant replies at docket 11.  Oral argument was requested and will be heard.

## III.  BACKGROUND

Plaintiffs are or were employed by the City of Phoenix ("City") fire department as firefighters or engineers.  Defendant is a third-party insurance administrator for the City and adjusts workers' compensation claims made by City employees.  Plaintiffs, including Michael Schamadan on behalf of his late wife, allege that they sustained serious injuries or illnesses resulting from their work and filed workers' compensation claims.  They allege that Defendant, with the assistance and knowledge of certain City employees, wrongfully denied and delayed workers' compensation benefits and as a result their medical care and financial condition suffered.

Plaintiffs bring two claims against Defendant.  First, they allege that Defendant, acting in concert with the City, fraudulently denied their workers' compensation benefits in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, 1964, and 1965.  Second, they allege that Defendant violated Arizona law by aiding and abetting the City's breach of its duty of good faith and fair dealing.

Defendant moves to dismiss both claims.  As to the RICO claim, it argues that Plaintiffs have not alleged and cannot allege that they were injured in business or property as is required under RICO,[1] because their injuries are personal injuries and are not business related.  It argues that RICO was not intended to provide Plaintiffs with

_____

[1] 18 U.S.C. § 1964(c).

1  another vehicle for bringing bad faith claims against insurance companies and that the

2  Arizona Workers Compensation Act provides an exclusive remedy for employees

3  injured during the scope of employment.  As for the aiding and abetting claim,

4  Defendant argues that Plaintiffs cannot bring such a claim against it, an agent of the

5  City, as a matter of Arizona law.  Alternatively, it argues that Plaintiffs failed to

6  adequately plead an aiding and abetting claim.

7                              **IV.  STANDARD OF REVIEW**

8          Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims.  In reviewing such

9  a motion, "[a]ll allegations of material fact in the complaint are taken as true and

10  construed in the light most favorable to the nonmoving party."[2]  To be assumed true,

11  the allegations "may not simply recite the elements of a cause of action, but must

12  contain sufficient allegations of underlying facts to give fair notice and to enable the

13  opposing party to defend itself effectively."[3]  Dismissal for failure to state a claim can be

14  based on either "the lack of a cognizable legal theory or the absence of sufficient facts

15  alleged under a cognizable legal theory."[4]  "Conclusory allegations of law . . . are

16  insufficient to defeat a motion to dismiss."[5]

17          To avoid dismissal, a plaintiff must plead facts sufficient to "state a claim to relief

18  that is plausible on its face."[6]  "A claim has facial plausibility when the plaintiff pleads

19  factual content that allows the court to draw the reasonable inference that the

20  defendant is liable for the misconduct alleged."[7]  "The plausibility standard is not akin to

21

22          [2]*Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

23          [3]*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

24          [4]*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

25          [5]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

26          [6]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550
27  U.S. 544, 570 (2007)).

28          [7]*Id.*

a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[8]  "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[9]  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[10]

## V.  DISCUSSION

### A. RICO Claim

To recover under RICO a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity . . . (5) causing injury to the plaintiff's 'business or property.'"[11]  Defendant argues that Plaintiffs have failed to state a valid injury to "business or property" as required because their damages are "wholly derivative of their personal injuries."[12]

In support of its argument, Defendant relies on *Jackson v. Sedgwick Claims Management Services, Inc.*,[13] a recent en banc opinion by the Sixth Circuit.  In *Jackson*, the plaintiffs were employees who suffered work-related injuries.  They filed workers' compensation claims with the employer's  third-party benefit claims administrator.  The claims administrator disputed the employees' claims and refused to pay them benefits.

---

[8]*Id.* (citing *Twombly*, 550 U.S. at 556).

[9]*Id.* (quoting *Twombly*, 550 U.S. at 557).

[10]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr v. Baca*, 652 F.3d at 1216.

[11]*Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (quoting 18 U.S.C. §§ 1964(c), 1962(c)).

[12]Doc. 8 at p. 5.

[13]731 F.3d 556 (6th Cir. 2013).

-4-

The *Jackson* plaintiffs sued, alleging that the employer, its claims administrator, and a doctor used by the claims administrator engaged in a fraudulent scheme to deny workers' compensation benefits to injured employees in violation of RICO.  The district court granted the defendants' motion to dismiss, and a Sixth Circuit panel reversed[14] based on *Brown v. Cassens Transport Co.*,[15] which held that employees' alleged injury to property under RICO by alleging devaluation of either their statutory expectancy of or claim for workers' compensation benefits.

The Sixth Circuit granted the defendants' petition to rehear the case en banc.  It then overruled *Brown*, holding that activity leading to a loss or devaluation of workers' compensation benefits did not constitute the injury to business or property required to support a RICO claim.[16]  The court concluded that the definition of the term "business or property" under RICO "depends on federal statutory purpose," not necessarily state law, and that "the task of [the] court is to 'determine whether Congress intended the damages that plaintiffs seek . . . to be recoverable under civil RICO.'"[17]  The court concluded that even if the expectation of workers' compensation benefits constituted a property right under state law, injury related to those benefits is not sufficient to support a RICO claim because such injury is "inextricably intertwined with a personal injury" and "personal injuries and pecuniary losses flowing from those personal injuries fail to confer relief under [RICO]."[18]  It said its conclusion was strengthened when considered in light of federalism principles, noting that if Congress intended to allow plaintiffs to use RICO "to collaterally attack an administrative scheme created by state law to supplant

---

[14]699 F.3d 466 (6th Cir. 2012).

[15]675 F.3d 946 (6th Cir. 2012).

[16]731 F.3d at 558-59.

[17]*Id.* at 565 (quoting *Grogan v. Platt*, 835 F.2d 844, 847 (11th Cir. 1988)).

[18]*Id.* at 565-66.

1  personal injury tort claims," it would expect a clear statement of Congress' intent to do
2  so.[19]

3      There is no Ninth Circuit case specifically addressing whether the expectation of
4  workers' compensation benefits is property for the purpose of bringing a civil RICO
5  claim, but in the Ninth Circuit what constitutes property under RICO is typically
6  determined by looking to state law.[20]  In *Diaz v. Gates*,[21] the plaintiff alleged that police
7  officers had fabricated evidence, tampered with witnesses, and conspired to obtain a
8  false conviction against him.  He alleged that as a result he "was rendered unable to
9  pursue gainful employment" while defending himself and during incarceration."[22]  The
10  court stated that a plaintiff needs to allege both a financial loss and an injury to a
11  property interest valid under state law in order to bring a RICO claim.[23]  It concluded
12  that Diaz alleged two types of injuries: "(1) the personal injury of false imprisonment and
13  (2) the property injury of interference with current or prospective contractual relations."[24]
14  The first, it concluded, was not compensable under RICO.  The second, however, was
15  a valid property interest under California state law and, because plaintiff had alleged
16  both an injury to a valid property interest and a financial loss, he had a proper RICO
17  claim.[25]

18      Here, the court concludes that Plaintiffs possess a property right in their workers'
19  compensation benefits under Arizona law.  Taking the allegations in the complaint as

20
21  _____
22  [19]*Id.* at 567.

23  [20]*Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005).

24  [21]420 F.3d 897.

25  [22]*Id.* at 897.

26  [23]*Id.* at 900.

27  [24]*Id.* at 902.

28  [25]*Id.* at 900-02.

true, Plaintiffs all suffered injuries while working for the City's fire department.  Under

Arizona's workers' compensation statute, when an employee is injured on the job and

the injury was not self-inflicted, that employee "shall be entitled to receive and shall be

paid such compensation for loss sustained on account of the injury . . . as [is] provided

by this chapter."[26]  The mandatory language of this statute is sufficient to create a

property interest in the expectation of workers' compensation benefits.[27]  Also, Plaintiffs

have a property right in their workers' compensation benefits because Plaintiffs are

third-party beneficiaries of the insurance contract between the City and Defendant,[28]

and under Arizona law, a contractual right is a property right.[29]  Indeed, Defendant does

not argue that workers' compensation benefits are not property interests under Arizona

law.

Defendant instead focuses on the fact that *Diaz* did not mandate that the court

use state law definitions of property when determining whether a plaintiff suffered the

requisite injury under RICO and urges the court to consider whether under federal law

workers' compensation interests should be considered property.  Indeed, other courts

have noted that federal law ultimately determines what is "business or property" under

RICO and that a property interest recognized by state law may still not rise to the level

of "business or property" if it contravenes "federal statutory purpose."[30]  Defendant

---

[26]Ariz. Rev. Stat.  §23-1021.

[27]*See Shelby Sch. v. Ariz. State Bd. of Educ.,* 962 P.2d 230, 242 ("An expectation of entitlement sufficient to create a property interest 'depend[s] largely upon the extent to which the statute contains mandatory language that restricts the discretion of the [agency].'" (quoting *Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980))).

[28]*See Rowland v. Great States Ins. Co.*, 20 P.3d 1158, 1163 (Ariz. Ct. App.  2001) ("It is undisputed that [the employee] was a third-party beneficiary of the workers' compensation insurance contract between his employer and [the insurer].").

[29]*Van Loan v. Van Loan*, 569 P.2d 214, 2116 (Ariz. 1977) (en banc) ("[A] contractual right . . . is a form of property.").

[30]*Jackson*, 731 F.3d at 565; *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998); *DeMauro v. DeMauro*, 115 F.3d 94, 96 (1st Cir. 1997).

-7-

1  argues that allowing workers' compensation benefits to be considered property

2  contravenes the purpose behind RICO because it originates from a personal injury,

3  which would not be compensable under RICO.  However, the court concludes that such

4  an argument is precluded based on *Diaz*.  In *Diaz*, a personal injury (false

5  imprisonment) led to a property injury (interference with contractual and business

6  relationships), but the court stressed that the two injuries should be treated as distinct

7  injuries and held that the property injury was compensable under RICO.[31]  Thus, the

8  court rejected the argument that an injury to property is not recoverable under RICO

9  simply because it originated from or relates to a personal injury.

10        Here, Plaintiffs do not allege that Defendant caused their underlying personal

11  injuries and are not seeking to recover damages for those personal injuries.  Instead,

12  they allege that Defendant caused injury to a separate and distinct property right—the

13  right to receive benefits—which caused additional hardships and losses.  In other

14  words, while the Plaintiffs' RICO claims may have originated from personal injuries in

15  that Plaintiffs suffered personal injuries which led them to file claims for workers'

16  compensation, the harm alleged here is to the intervening legal entitlement which

17  caused additional financial losses.  Based on *Diaz*, this is sufficient to raise a RICO

18  claim.

19        Defendant also argues that allowing Plaintiffs to bring a RICO action based on

20  allegations of fraudulent denials of workers' compensation claims would undermine the

21  goal of Arizona's workers' compensation framework, which is to provide an exclusive

22  remedy for an employee injured on the job.  It urges the court to conclude that RICO

23  claims involving workers' compensation must fail because Congress has not expressly

24  stated its intent to allow supplemental remedies to a state's workers' compensation

25  scheme.  However, as noted by Plaintiffs, "[i]t is of no moment that Arizona provides an

26  alleged exclusive remedy for workplace injury" because, under the Supremacy Clause,

27  _____

28        [31]*Diaz*, 420 F.3d at 901-02.

-8-

1 | Arizona cannot make its workers' compensation scheme exclusive of federal

2 | remedies.[32]   Moreover, while the court recognizes the federalism concerns raised by

3 | Defendant and discussed in the Sixth Circuit's majority opinion *Jackson*, they do not

4 | find support under Ninth Circuit law which is binding on this court.  It may be added that

5 | analysis by the dissent in *Jackson* is persuasive:  "The predicate offense for the RICO

6 | action is mail fraud, not the denial of worker's compensation for a personal injury."[33]  "A

7 | federal RICO claim and a state claim for worker's compensation are legally distinct,

8 | even though they share factual underpinnings."[34]

9 | **B.  Aiding and Abetting Claim**

10 |      Defendant argues that Plaintiffs' claim that Defendant, acting as an agent of the

11 | City, aided and abetted the City's bad faith fails as a matter of law because a

12 | corporation can only act through its employees and agents and thus cannot aid and

13 | abet itself.  This argument is unavailing.  Under Arizona law, it is established that "an

14 | agent will not be excused from responsibility for tortious conduct because he is acting

15 | for his principal."[35]  Indeed, applying this principle of agency law, other judges in this

16 | district have determined that an agent can be liable for aiding and abetting a principle's

17 | breach of the duty of good faith and fair dealing under Arizona law.[36]  As noted in

18 | another recent District of Arizona case, *Inman v. Wesco Ins. Co.*,[37] "[i]t is true that there

---

[32]Doc. 10 at p. 12.

[33]731 F.3d at 582 (Moore, J., dissenting).

[34]*Id.*

[35]*Warner v. Sw. Desert Images, LLC*, 218 Ariz. 121, 127 (Ct. App. 2008).

[36]*Inman v. Wesco Ins. Co.*, No. cv-12-02518, 2013 WL 2635603, at *4 (D. Ariz. June 12, 2013) (holding that an insurance adjuster could be held liable for aiding and abetting an insurer's violations of the duty of good faith and faith dealing); *Morrow v. Boston Mut. Life Ins. Co.*, No. CV-06-2635, 2007 WL 3287585 (D. Ariz. Nov. 5, 2007) (holding that an agent of an insurance company could be liable for aiding and abetting the company's insurance bad faith).

[37]No. CV-12-02518, 2013 WL 2635603 (D. Ariz. June 12, 2013).

-9-

1   are not many recorded cases where a claim is pressed against the adjuster;

2   nevertheless, [the defendant] has not shown any reason why principles of agency law

3   should not apply with equal force in the insurance setting."[38]

4          Defendant argues that these other district court cases were incorrectly decided

5   and that this court should conclude that agents cannot, as a matter of Arizona law, aid

6   and abet their principles.  It argues that under Arizona law, agents cannot conspire with

7   their corporate principal when acting on behalf of its principal, citing *Perry v. Apache*

8   *Junction Elementary School District*[39] and *Petroni v. Board of Regents*[40] and because

9   both civil conspiracy and aiding and abetting are derivative torts, the court should apply

10  similar reasoning and conclude an agent cannot aid and abet its principal's tortious

11  conduct when it acts on behalf of the principal.  However, as noted in Judge Bolton's

12  recent order in *Smith v. Country Mutual Insurance Co.* when rejecting a similar

13  argument,[41] the cause of action for aiding and abetting is not the same as conspiracy.

14  "There is a difference between proving an agreement to participate in a tortious line of

15  conduct (civil conspiracy) and proving knowing action that substantially aids tortious

16  conduct (aiding and abetting)."[42]  Defendant does not cite any authority to convince the

17  court that an agent cannot aid and abet his principal in the commission of a tort, even if

18  that tort arises in an insurance setting.

19         Defendant alternatively argues that Plaintiffs' aiding and abetting claim should be

20  dismissed because they have not provided enough detail to sufficiently plead an

21  underlying tort committed by the City.  To properly plead a claim of aiding and abetting

22  _____

23     [38]*Id.* at *4.

24     [39]514 P.2d 514 (Ariz. Ct. App. 1973).

25     [40]566 P.2d 1038 (Ariz. Ct. App. 1977).

26     [41]2:12-cv-02351-SRB (Jan. 10, 2013).

27     [42]*Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395*
28  *Pension Trust Fund*, 38 P.3d 12, 28 n.16 (Ariz. 2002) (en banc).

1   tortious conduct, a plaintiff must allege that (1) the primary tortfeasor committed a tort

2   that causes injury to the plaintiff; (2) the defendant knew that the primary tortfeasor's

3   conduct constituted a breach of duty; and (3) the defendant substantially assisted or

4   encouraged the primary tortfeasor in the achievement of the breach.[43]  Here, the

5   underlying tort allegedly committed by the primary tortfeasor, the City, is bad faith.  To

6   allege a claim of bad faith, Plaintiffs must allege facts that "show the absence of a

7   reasonable basis for denying the claim."  While Defendant correctly points out that

8   much of the complaint details actions allegedly taken by Defendant and does not

9   provide specific facts about the City's actions, the court concludes that read as a whole,

10  the complaint adequately pleads an aiding and abetting claim.  It sets forth sufficient

11  facts about Defendant's alleged actions to show the absence of a reasonable basis for

12  denying the claim, and then it states that the City either participated in or approved of

13  Defendant's actions.[44]  Taking all allegations as true and drawing all inferences in favor

14  of Plaintiffs, the complaint sufficiently pleads that the City committed the underlying tort

15  of bad faith which may then support an aiding and abetting claim against Defendant.

16  **C. Michael Schamadan's claims**

17      Defendant asks that the court dismiss Michael Schamadan's claims, in both his

18  individual capacity and as representative for Brandi Schamadan's estate, to the extent

19  he seeks damages for pain and suffering.  As for Mr. Schamadan's individual claims,

20  the complaint only sets forth the damages suffered by Mrs. Schamadan.[45]  It fails to

21  allege that Mr. Schamadan suffered an injury or any losses as a result of Defendant's

22  actions.  Accordingly, Mr. Schamadan has not adequately pled his individual claim.

23      As for Mr. Schamadan's claims as representative of Mrs. Schamadan's estate,

24  his RICO claim survives for the reasons discussed above, and he may recover for the

25

26      [43]*Id.* at 23.

27      [44]Doc. 1 at ¶ 70.

28      [45]Doc. 1 at ¶ 11.

1   financial losses arising from the injuries to Ms. Schamadan's property rights on behalf

2   of Mrs. Schamadan's estate.  However, to the extent the complaint seeks to recover for

3   the pain and suffering of Mrs. Schamadan as a result of the Defendant's alleged RICO

4   violations, that portion of the complaint must be dismissed.  Indeed, none of the

5   Plaintiffs may recover damages for "humiliation, worry, and distress" under RICO.  Their

6   RICO remedies are limited to financial loss.  To the extent the complaint seeks recovery

7   for Mrs. Schamadan's pain and suffering as a result of Defendant's alleged aiding and

8   abetting that portion of the complaint is dismissed, because under Arizona law claims to

9   recover damages for pain and suffering do not survive the death of the person injured.

10   ## VI.  PRELIMINARY CONCLUSION

11          Based on the above, Defendant's motion at docket 8 to dismiss Plaintiffs'

12   complaint pursuant to Rule 12(b)(6) probably should be denied in part and granted in

13   part as follows: Defendant's request that Plaintiffs' RICO claims be dismissed probably

14   should be denied; Defendant's request that Plaintiffs' aiding and abetting claims be

15   dismissed probably should be denied; Defendant's request that Mr. Schamadan's

16   claims as representative of the estate of Mrs. Schamadan be dismissed to the extent

17   they seek damages for pain and suffering clearly should be granted;  Defendant's

18   request that Mr. Schamadan's individual claims be dismissed probably should be

19   granted, but Mr. Schamadan's request to be permitted to seek leave to amend his

20   individual claims probably should be granted.

21          DATED this 9th day of December 2013.

22

23                                                      /S/
                                            JOHN W. SEDWICK
24                                          UNITED STATES DISTRICT JUDGE

25

26

27

28