1
2
3
4
5
6
7
8           UNITED STATES DISTRICT COURT
9               DISTRICT OF ARIZONA
10

11  LAURIE MILLER, BRIAN DIMAS,          )
    KIM MILLS, ANTHONY SOZA,             )
12  BRUCE CAMPBELL, KELLIE               )      2:13-cv-1419 JWS
    BOWERS, TIM HUNTER, BRIAN            )
13  SAYLOR, MICHAEL SCHAMADAN,           )
    INDIVIDUALLY AND AS                  )      ORDER AND OPINION
14  REPRESENTATIVE OF THE ESTATE         )
    OF HIS WIFE, BRANDI SCHAMADAN,       )
15                                       )
              Plaintiffs,                )      [Re:   Motion at docket 64]
16                                       )
         vs.                             )
17                                       )
    YORK RISK SERVICES GROUP,            )
18                                       )
              Defendant.                 )
19  _____  )

20
                   **I.  MOTION PRESENTED**
21
           At Docket 64, plaintiffs Laurie Miller, Brian Dimas, Kim Mills, Anthony Soza,
22
    Bruce Campbell, Kellie Bowers, Tim Hunter, Brian Saylor, and Michael Schamadan,
23
    individually and as representative of the estate of his wife, Brandi Schamadan,
24
    (collectively "Plaintiffs") move pursuant to Rules 15 and 16(b) for permission to file an
25
    amended complaint.  At docket 79, defendant York Risk Services Group ("Defendant")
26
    responds.  No reply has been filed.  Oral argument was not requested and would not
27
    assist the court.
28

### III.  BACKGROUND

Plaintiffs are or were employed by The City of Phoenix ("City") fire department as firefighters or engineers.  Defendant adjusts workers' compensation claims made by City employees.  In their First Amended Complaint,[1] Plaintiffs alleged that they sustained serious injuries or illnesses at work and filed workers' compensation claims.  Plaintiffs also alleged that Defendant, with assistance from certain City employees, wrongfully denied or delayed payment of workers' compensation benefits.

The First Amended Complaint pleads two claims against Defendant.  First, it alleges that Defendant, acting in concert with the City, fraudulently denied Plaintiffs' workers' compensation benefits in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, 1964, and 1965.  Second, it alleges that Defendant violated Arizona law by aiding and abetting the City's breach of its duty of good faith and fair dealing.  Defendant moved to dismiss both claims.  The court denied the motion in general, but granted some relief as to Michael Schamadan's claims.  The court allowed Plaintiffs to file a further complaint refining the Shamadan claims.[2]  A Second Amended Complaint setting forth the same claims as the First Amended Complaint and refining the Shamadan claims was filed at docket 28.

In the meantime, the court filed a Scheduling and Planning Order[3] which set February 28, 2014, as the deadline for filing amended pleadings.  Plaintiffs timely filed a motion to amend their complaint on February 28, 2014, at docket 49.  Their proposed amended complaint would add The Frank Gates Services Company d/b/a Avizent Risk ("Avizent") as a defendant.  Plaintiffs also proposed to add a claim for intentional infliction of emotional distress ("IIED") against both Avizent and York.  On March 14,

---

[1]Doc. 5.

[2]*See* Final Order at doc. 26 and Preliminary Order at doc. 23.

[3]Doc. 25.

1   2014, York filed an opposition to the motion to amend.[4]  Five days later Plaintiffs

2   withdrew the pending motion to amend,[5] and filed a new motion to amend at docket 64.

3   The motion at docket 64 proposes to add Avizent as a defendant, to include IIED

4   claims, and to add Phoenix police detective Joie Klages ("Klages") as a plaintiff.

5   Plaintiffs assert that Klages suffered an on-the-job injury which resulted in a wrongful

6   denial of her claim for workers' compensation benefits.  Klages did not contact Plaintiffs'

7   counsel until March 5, 2014, several days after the timely motion to amend at docket 49

8   had been filed.

9                          ### III.  STANDARD OF REVIEW

10              **A.  Rule 16(b)**

11          After a district court has filed a scheduling order setting a deadline for amending

12   pleadings, the standards of Rule 16(b) must be considered.[6]  Rule 16(b)(4) provides

13   that a scheduling order "may be modified only for good cause and with the judge's

14   consent."  "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith

15   of the party seeking to interpose an amendment and the prejudice to the opposing

16   party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party

17   seeking the amendment."[7] *Id*. at 609.

18              **B.  Rule 15**

19          Rule 15 governs motions to amend.  After a responsive pleading is served, a

20   party may file an amended complaint "only with the opposing party's written consent or

21   the court's leave.  The court should freely give leave when justice so requires."[8]  Grant

---

22

23

24          [4]Doc. 61.

25          [5]Doc. 65.

26          [6]*Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 607-08 (9th Cir. 1992).

27          [7]*Id*. at 609.

28          [8]Fed. R. Civ. Proc. 15(a)(2).

1   or denial is vested in the trial court's discretion.[9]  Ordinarily, leave should be granted

2   unless the amendment follows undue delay, seeks to inject an improper claim, unfairly

3   prejudices the opposing party, or threatens to unduly increase discovery or delay trial.[10]

4   The Ninth Circuit assesses five factors in determining whether amendment should be

5   granted or denied: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party,

6   (4) futility of amendment; and (5) whether plaintiff has previously amended her

7   complaint."[11]

8                                   **IV.  DISCUSSION**

9   **A. Rule 16(b) does not foreclose Plaintiffs' motion**

10          Plaintiffs' motion to amend at docket 49 was timely filed, and were it the pending

11  motion, there would be no need to consider Rule 16(b).  The motion which is pending is

12  the motion at docket 64.  That motion was not timely filed.  However, the amended

13  complaint it proposes is identical to the amended complaint which was the subject of

14  the motion at docket 49, save for the addition of proposed plaintiff Klages.  Because

15  Klages was unknown to Plaintiffs' counsel until March 5, 2014, the court finds that

16  Plaintiffs had good cause for filing the motion at docket 64 just two weeks after Klages

17  came forward.  Two weeks is a reasonable amount of time for Plaintiffs' counsel to

18  investigate Klages' circumstances to determine whether she had a viable claim and

19  whether her claim could sensibly be joined with Plaintiffs' claims.

20          Defendant objects to Plaintiffs' argument in support of the motion at docket 64

21  regarding whether the IIED amendment would be futile because the now withdrawn

22  motion at docket 49 did not include that topic.  Defendant's position is unpersuasive.

23  Had the matter gone forward on the basis of the motion at docket 49, Defendant would

24

25          [9]6 CHARLES ALAN WRIGHT, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and*

26  *Procedure,* § 1484, at 594-96 (2d ed. 1990) ("*Wright*").

27          [10]*Wright* § 1487, at 613.

28          [11]*Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

1   have raised the futility argument in response to the motion at docket 49, and Plaintiffs

2   would have addressed the futility argument in their reply.  Similarly, each party had the

3   opportunity to address futility in connection with the motion at docket 64.  The

4   difference is that Plaintiffs addressed it in anticipatory fashion in support of the motion

5   at docket 64 and then did not file a reply memorandum.

6       Defendant actually benefitted from the replacement of the motion at docket 49

7   with the motion at docket 64, because Defendant saw Plaintiffs' argument about futility

8   before filing its response.  There is clearly no prejudice to Defendant emanating from

9   filing the motion at docket 64.  To hold that Rule 16(b) nevertheless forecloses

10  consideration of the motion at docket 64 because Plaintiffs could have been more

11  diligent would exalt form over substance.  Any lack of diligence reflected by Plaintiffs'

12  failure to address the futility issue in the motion at docket 49 is vitiated by the fact that it

13  would have been addressed in Plaintiffs' reply.[12]  Finding no reason to deny the motion

14  at docket 64 based on Rule 16(b), the court will turn to Rule 15 considerations.

15  **B.  Application of Rule 15**

16      Plaintiffs' proposal to add Avizent as a defendant is not opposed by Defendant.

17  However, the proposal to add Klages as a plaintiff is opposed by Defendant on the

18  grounds that her addition to a case which already has nine plaintiffs close in time to the

19  deadline for completing discovery is prejudicial.

20      Discovery in this case is scheduled to close on October 31, 2014, just over four

21  months from the present.[13]  It appears from the record that a great deal of discovery

22  has already been conducted, especially by Defendant.  Written discovery was

23

24  _____

25      [12]To the extent Defendant argues lack of diligence sufficient to deny the motion at
    docket 64 on the basis of Rule 16(b) inheres in the fact that the IIED claims were first presented

26  "more than seven months after litigation began," this is not a proper argument under Rule 16(b),
    because the IIED claims were presented in the motion at docket 49 on the last date set by the

27  Scheduling Order for filing motions to amend.

28      [13]Scheduling and Planning Order at doc. 25.

1   commenced by Defendant on January 23, 2014,[14] and has been on-going.  The parties

2   began noticing depositions in April of this year.[15]  Among other things, Defendant

3   noticed the depositions of plaintiff Miller for May 9, 2014,[16] Soza for May 12, 2014,[17]

4   and all of the other Plaintiffs on various dates in May and June, with the last deposition

5   set for June 30, 2014.[18]  In addition, Defendant has noticed numerous depositions of

6   records custodians, beginning with depositions scheduled in early April of 2014,[19] with

7   many more to follow in May of 2014,[20] and still more on dates in June of 2014.[21]

8   Defendant has also noticed the depositions of at least two physicians, although their

9   depositions are scheduled for future dates.[22]  The record shows that Defendant has

10  conducted more discovery than have Plaintiffs, but Plaintiffs have also noticed

11  numerous depositions.  In sum, a great deal of discovery has already taken place.[23]

12          It is within the context of all the discovery which has already been finished, or will

13  soon be finished, that the court must evaluate Defendant's assertion that adding Klages

14  to the case at the present time will create a discovery burden that will prejudice

15

16  _____

17      [14]*See* Notice at docket 34.

18      [15]Docs. 81 and 83–91.

19      [16]Doc. 87.

20      [17]Doc. 91.

21      [18]Doc. 81, 83–86, 88, and 90.

22      [19]*E.g.,* Docs. 62-1, 63-1, 67-1, and 68-1.

23      [20]Docs. 69-1, 70-1, 71-1, 72-1, 74-1, 75-1, 76-1, 102-1, 105-1, 109-1, 111-1,113-1,
24  118-1, 120-1, 125-1, and 126-1.

25      [21]Doc. 129-1, 143-1, 149-1, 160-1, and 162-1.

26      [22]Docs. 181 and 182.

27          [23]The court is aware that Plaintiffs' papers indicate that no depositions have been taken
    (doc. 64 at 5-6), but that statement was made on March 19, 2014, prior to the date of the
28  earliest noticed deposition.

1  Defendant.  The court agrees with Defendant that if Klages were added Defendant

2  would need to depose Klages, her treating physician or physicians, and the claims

3  personnel involved in adjusting her claim.  Additional written discovery would also be

4  warranted. Given the amount of discovery already completed and given that discovery

5  will not close for more than four months, the need to conduct additional discovery

6  related to Klages will not prejudice Defendant.  However, Defendant has a legitimate

7  concern that the restrictions in the Planning and Scheduling Order on the number of

8  depositions it may take and the number of written discovery requests it may make could

9  prejudice Defendant in the event that Klages is joined.  This problem can be eliminated

10  by allowing Defendant five additional depositions, twelve additional written

11  interrogatories, and six additional requests for admission beyond those permitted by the

12  order at docket 25.  This additional discovery will **only** be available with respect to

13  Klages.

14          The remaining issue is whether Plaintiffs should be permitted to add IIED claims.

15  As the parties' briefing shows, this issue turns on whether or not the court should treat

16  the IIED claims as futile.  Plaintiff asserts that futility of the amendment is not a proper

17  subject of amendment motion practice.[24]  However, that is not the law in the Ninth

18  Circuit.[25]  Indeed, the futility of a proposed amendment, without more, can provide a

19  sufficient basis for denying a motion to amend.[26]

20          Both parties correctly[27] note that under Arizona law an IIED claim requires a

21  plaintiff to prove three elements: (1) extreme and outrageous conduct by defendant,

22  (2) defendant's intention to cause emotional distress, or defendant's reckless disregard

23  to a near certainty that its conduct will cause emotional distress, and (3) defendant's

24

25      [24]Doc. 64 at 6.

26      [25]*E.g., Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

27      [26]*Id.; Outdoor Lighting Systems, Inc. v. City of Mesa*, 997 F. 2d 604, 614 (9th Cir. 1993).

28      [27]*Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987).

conduct actually did cause severe emotional distress.  The "extreme and outrageous" standard cannot be taken lightly in Arizona.  The Arizona Supreme Court has said that it follows the Restatement standard which describes the necessary conduct as conduct which is "atrocious" and "beyond all possible bounds of decency."[28]  The Arizona Supreme Court has explained that the conduct needed to support an IIED claim "falls at the extreme edge of the spectrum of possible conduct,"[29] a high bar to clear.

Both parties draw the court's attention to *Hixon v. State Compensation Fund*.[30]  There, the trial court dismissed a claim for IIED which was based on the allegation that two employees of the State Compensation Fund conspired to improperly terminate the plaintiff's benefits when they issued a notice of terminated claim status which was not supported by the "medical evidence for termination required by [state law]."[31]  The appellate court affirmed, saying that "the bare allegation that the State Compensation Fund employees' conduct was an intentional infliction of mental and emotional distress fails to state a claim for relief."[32]  Defendant correctly urges that plaintiffs' attempt to distinguish *Hixon* on the grounds that it antedates Arizona's recognition of bad faith claims misses the mark, for the claims in *Hixon*, as well as those Plaintiffs would add here are IIED claims.  Plaintiffs also urge as a basis for distinguishing *Hixon* the proposition that "the *Hixon* complaint was based on a negligence type standard,"[33] in contrast to the allegations here of intentional conduct.  Yet, as the *Hixon* court made clear, the complaint there alleged that "Morse and Sechrist, did conspire to improperly

---

[28]*Id.* (quoting with approval from RESTATEMENT (SECOND) of TORTS § 46 cmt. d (1965).

[29]*Watts v. Golden Age Nursing Home*, 619 P.2d 1032, 1035 (1980).

[30]565 P.2d 898 (Ariz. App. 1977).

[31]*Id.* at 899.

[32]*Id.*

[33]Doc. 64 at p. 10.

1   terminate the said benefits in violation of [state law requiring payment of benefits] [and]

2   "[t]hat said conduct of . . . Morse and Sechrist, was an intentional infliction of mental

3   and emotional distress."[34]   In other words, the *Hixon* complaint was read by the court to

4   have alleged that Morse and Sechrist knew the necessary medical information was

5   missing, but "intended" to terminate the benefits anyway for the purpose of inflicting

6   mental and emotional distress.  Thus, the court reads *Hixon* as another of the decisions

7   which emphasizes the high bar required by Arizona law for conduct sufficiently

8   reprehensible to support an IIED claim.

9          The cases setting the high bar for conduct needed to support IIED claims under

10  Arizona law do not foreclose the IIED claims pled in the proposed amended complaint.

11  While the allegations in Count IV are to some extent conclusory, it is necessary to read

12  them in the context of the very specific allegations made in the complaint with respect

13  to each of the Plaintiffs' and Defendant's intentions.  With respect to each one of them,

14  Plaintiffs allege that Defendant knew facts which should have resulted in payment of

15  benefits, but that Defendant ignored the facts in order to deny or delay payment of

16  benefits.[35]  While the allegations of knowledge on York's part may or may not be proved

17  at trial, the court must consider the allegations of material fact in the proposed

18  amended complaint to be true and construe them in a light favorable to Plaintiffs.[36]  So

19

20

21

22

23

24          [34]*Hixon*, 565 P.2d at 899.

25          [35]*See* Doc. 64-1:  Plaintiff Shamadan, ¶¶ 5-10; plaintiff Hunter, ¶¶ 13-15; plaintiff
    Bowers, ¶¶ 22, 23, 26; plaintiff Miller, ¶¶ 28, 29, 31; plaintiff Dimas, ¶¶ 33, 34, 38; plaintiff Mills,
26  ¶¶ 40, 41, 44; plaintiff Soza, ¶¶ 48, 49, 52; plaintiff Campbell, ¶¶ 54, 55, 58; plaintiff Saylor, ¶¶
    60, 61, 64; plaintiff Klages, ¶¶ 66, 67, 70.

27          [36]*Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1977). Concerning the futility issue, the
28  court finds cases construing Rule 12(b)(6) to provide appropriate guidance.

1  construed, the allegations provide sufficient notice to Defendant,[37] and whether or not
2  provable at trial, they are at least plausible which is sufficient.[38]

3  　　　Defendant also argues that the proposed amended complaint does not allege
4  that Defendant's conduct actually did cause severe emotional distress, one of the third
5  elements of an IIED claim under Arizona law.  The court largely agrees with Defendant.
6  Considering the nature of the underlying injuries, denials, and delays pled, there is not a
7  sufficient allegation that Defendant actually did cause severe emotional injury with
8  respect to any of the Plaintiffs, save one.  This shortcoming is reflected in the summary
9  paragraphs specifying damages, but most importantly in the related paragraphs
10 describing in more detail what Plaintiffs believe happened.  The allegations as to
11 Plaintiffs Hunter, Bowers, Miller, Dimas, Mills, Soza, Campbell, Saylor, and Klages do
12 not support an IIED claim.  The claim pled by plaintiff Michael Schamadan on his own
13 behalf does.  His summary of damages lacks the phrase "severe mental and emotional"
14 distress, but his damages claim for "worry [and] distress" must be read together with the
15 allegations of the suffering he endured because of Defendant's conduct.  That
16 suffering–particularly the loss of the family home during Mrs. Schamadan's final
17 illness–is sufficient to establish the third element of an IIED claim.

18 ## V.  CONCLUSION

19 　　　For the reasons above, the motion at docket 64 is GRANTED in part and
20 DENIED in part as follows: Plaintiffs may file an amended complaint in which Klages is
21 added as a plaintiff and Avizent is added as a defendant.  The amended complaint may
22 include a claim for IIED for plaintiff Michael Schamadan, but it may not include an IIED
23 claim for any of the other Plaintiffs.  The amended complaint shall be filed within seven
24 days from the date of this order, and an answer shall be filed within seven days from
25 the date the amended complaint is filed.

26

27 [37]*See, Star v. Baca*, 652 F.3d 1002, 1216 (9th Cir. 2011).

28 [38]*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

-10-

1

2

3

4

       IT IS FURTHER ORDERED that, if necessary, with respect to plaintiff Klages **only**, Defendant may take five depositions, propound twelve interrogatories, and make six more requests for admission than otherwise authorized by the Planning and Scheduling Order at docket 25.

5

       DATED this 25th day of June 2014.

6

7

8

                       /S/
                   JOHN W. SEDWICK
             UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28