Michael Patrick Doyle (# 029400)
Kevin Wein (#022752)
DOYLE RAIZNER LLP
2929 East Camelback Rd., Suite 126
Phoenix, Arizona 85016
Phone:  (480) 447-2494
Fax:  (480) 685-5005
mdoyle@doyleraizner.com
kwein@doyleraizner.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LAURIE MILLER, BRIAN DIMAS, KIM MILLS, ANTHONY SOZA, BRUCE CAMPBELL, KELLIE BOWERS, TIM HUNTER,  BRIAN SAYLOR, JOI KLAGES, AND MICHAEL SCHAMADAN, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF HIS WIFE, BRANDI SCHAMADAN; | Case No.  2:13-cv-01419-JWS |
| Plaintiffs, | FOURTH AMENDED COMPLAINT AND JURY DEMAND |
| v. | |
| YORK RISK SERVICES GROUP;  THE FRANK GATES SERVICE COMPANY D/B/A AVIZENT RISK; | |
| Defendants. | |

**PLAINTIFFS' FOURTH AMENDED ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiffs by and through their attorney undersigned, and for their complaint against the Defendants, does hereby state, aver, and allege as follows:

**I.    FACTUAL OVERVIEW OF THE CASE**

1.    Firefighters and Police officers, along with other first responders, put their lives on the line to protect the citizens of their community every workday.  Timely and responsibly meeting the medical and basic living expenses of first responders injured

DOYLE RAIZNER LLP
2929 East Camelback Rd., Suite 126 ♦ Phoenix, AZ
85016
Phone:  480 447 2494 ♦ Fax:  480 685 5005

while serving in the line of duty is not just a legal obligation, but also a moral one.  An on the job injury to a Phoenix firefighter or Police Officer should not result in medical conditions worsened by delay and denial of necessary care, nor should it leave the first responder, or her family, financially battered and emotionally drained.

2.      Those entrusted with caring for the needs of injured first responders bear a clear responsibility to do so in a supportive manner, and not to create obstacles bound to worsen the physical and financial conditions of these valiant men and women.  This case is based upon a long term and ongoing scheme to delay and deny timely payment of critically needed workers' compensation medical and other payments owed to legitimately injured first responders of the City of Phoenix ("Phoenix").  York Risk Services Group ("York"), which markets itself as a "premier provider" of "claims management solutions", and The Frank Gates Service Company d/b/a Avizent Risk ("Avizent") are well aware of these critical needs.  Instead of carrying out the duties consistent with these legal and moral obligations, York and/or Avizent routinely and improperly chooses to hurl frivolous and legally unsound roadblock after roadblock to wrongfully deny care to Phoenix's first responders, with the assistance of some Phoenix administrators.   As a result, injured first responders, and their families, endure significant delays in medical care, often severe financial distress, and deleterious impacts on their ultimate physical and financial condition.  After being hurt on the job, these Plaintiffs, and others, have been met with abuse and worry, rather than the basic medical care and living expenses so necessary after an on the job injury.

**3.**      Avizent initially undertook the obligation in 2009 to ensure Phoenix first responders' medical and other needs were met when injured on the job.  On information

and belief, York assumed Avizent's ongoing obligations (including past liabilities) to the Phoenix first responders, and continued the same course of misconduct toward the Phoenix first responders.  Both Avizent and York are therefore liable for the misconduct alleged herein.

**What York and/or Avizent Did to Firefighters Brandi and Michael Schamadan**

4.     Brandi Schamadan served as a firefighter from 1993 to 2003.  Her surviving husband, Michael Schamadan, is also a long-serving firefighter.  During her years of work as a firefighter.   Ms. Schamadan was exposed to Polycyclic Aromatic Hydrocarbons ("PAH") during the course of fighting fires for Phoenix.

5.     In July 2009, Ms. Schamadan was diagnosed with Stage 3 Colon Cancer. Ms. Schamadan underwent extensive treatment with costly medical bills, including chemotherapy and radiation.  By October 2011 she was no longer in remission.

6.     In 2011, Deputy Fire Chief Mike Smith approached Ms. Schamadan about her cancer.  Deputy Fire Chief Mike Smith informed her that her exposure to PAH while working as a Phoenix firefighter was a potential cause for her cancer and she should file a workers' compensation claim.

7.     Ms. Schamadan promptly filed the claim for her work-caused cancer.  York and/or Avizent denied the claim, alleging that it was untimely filed.  In fact, Ms. Schamadan did not even know until that month that she had been exposed to PAH while working for the Phoenix Fire Department, and even a basic investigation would have confirmed that this alleged legal defense was not properly asserted to block Ms. Schamadan's claim under these circumstances.

8.     On April 20, 2011, Brian Heaton, an adjuster for York and/or Avizent, sent

Ms. Schamadan a notice of claim status through the United States Mail denying medical treatment for her on the job injury.   This denial was a fraudulent communication because York and/or Avizent knew that the injury was timely filed and must be paid. This claim is and was always clearly compensable under Arizona law.

9.    The Industrial Commission of Arizona completely rejected York and/or Avizent's claim that the application was not timely filed under the clear facts.  But York and/or Avizent still refused to pay benefits and filed a request for rehearing.

10.    Finally after the report of Dr. Sullivan, a medical toxicologist, conclusively confirmed that the cancer developed from Ms. Schamadan's exposure to PAH while fighting fires for the City of Phoenix, York and/or Avizent finally formally abandoned its improper denial of Ms. Schamadan's claim.   Unfortunately, for over another year, even after admitting responsibility to the State of Arizona and Ms. Schamadan, and as Ms. Schamadan's medical condition and her family's financial condition continued to deteriorate, York and/or Avizent refused to provide written confirmation of financial responsibility to a single health care provider.  York and/or Avizent also delayed and refused to reimburse the massive co-pays previously incurred by Ms. Schamadan and her husband for her care before York and/or Avizent admitted liability for the full amounts incurred (including the co-pays).  These continued refusals to pay imposed severe financial strain on Ms. Schamadan, Mr. Schamadan, and their family.   As expected, the consequences of these refusals was even more distress and worry for Ms. Schamadan, Mr. Schamadan, and their family in her last days as bills piled up, unpaid.

11.    Ms. Schamadan relied on the fraudulent communication because she suffered financial loss, including attorney's fees, medical care (including unreimbursed

deductibles, and medical mileage.)   Defendant's fraud directly caused injury to Ms. Schamadan and Mr. Schamdan because it deprived her of benefits and caused her to pay attorney's fees, medical care, suffer emotional pain and damages.   As a result of the delays in payments for the medical care for Ms. Schamadan, as well as delays in reimbursement of deductibles totaling many thousands of dollars, the Schamadan family lost their home during Ms. Schamadan's final illness.   The increased mental distress, financial damage, and increased physical pain caused by York and/or Avizent, had an adverse impact on Mr. Schamadan's relationship with his wife during her final days.

**12.**   Ms. Schamadan's cancer progressed and ultimately resulted in her death on March 22, 2013.  Ms. Schamadan is survived by her husband Michael and their two children, a 12 year old daughter and 9 year old son.  Mr. Schamadan brings this suit both individually and as the surviving spouse and legal heir of Brandi Schamadan.  Due to the wrongful denial, delay, and scheme, Ms. Schamadan, Mr. Schamadan, and their family suffered significant economic damage, humiliation, worry, distress, and continuing economic and physical damage.  In addition, York and/or Avizent's wrongful denial and delay of Ms. Schamadan's workers compensation benefits also deprived Mr. Schamadan of the love, affection, consortium, companionship, protection, discipline, comfort and guidance of his wife.

**What York and/or Avizent Did to Firefighter Tim Hunter**

13.   Tim Hunter worked as a firefighter for the City of Phoenix for over eight years, and until his on-the-job injury in 2010 was in outstanding physical condition. While entering a building engulfed in flames on September 17, 2010, the building's roof

collapsed and buried Mr. Hunter.  Although injured, Mr. Hunter freed himself from the rubble and continued fighting the fire.  As a result of his on the job injury, Mr. Hunter could not move his neck and experienced persistent numbness in his extremities.  Mr. Hunter filed a workplace injury report and sought treatment at the Fire Department's Health Center from Dr. Flemming.

14.    As his condition worsened, Mr. Hunter filed a claim for workers' compensation for his injury on June 21, 2011.  Chris Garland, an adjuster working for York and/or Avizent, denied Mr. Hunter's claim because the Health Center had lost the records documenting Mr. Hunter's visit to Dr. Flemming, and Dr. Flemming had passed away.   York and/or Avizent did so even though the Health Center's physician's assistant, Patrick Kelley, confirmed Mr. Hunter's visit for treatment.  Mr. Hunter's fellow firefighters, Raymond Gaspar and Michael Callahan, confirmed that the roof had collapsed and had fallen on Mr. Hunter.  Captain Gaspar, Mr. Hunter's commanding officer, also confirmed that Mr. Hunter had filed the proper paperwork and received treatment from Dr. Flemming for the injury.

15.    On July 18, 2011, Chris Garland then sent Mr. Hunter a notice of claim status through the United States Mail denying medical treatment for his on the job injury.  This denial was a fraudulent communication because York and/or Avizent knew that the roof had collapsed on Mr. Hunter and injured him while he was fighting a fire.  This claim is and was always clearly compensable under Arizona law.

16.    York and/or Avizent then sent Mr. Hunter to an Independent Medical Examination ("IME") with Dr. Beghin.  An IME is supposed to be unbiased and undirected by a claims company such as York and/or Avizent, but York and/or Avizent

know full well which "IME" doctors will and which will not provide objective evaluations. York and/or Avizent chose to have Mr. Hunter evaluated by Dr. Beghin. Dr. Beghin diagnosed Mr. Hunter with a chronic left sided radicular syndrome probably secondary to left C6 or C7 radiculopathy. But Dr. Beghin claimed he could not determine if the injury occurred from the incident on September 17, 2010 because the Health Center had lost the records of Mr. Hunter's treatment with Dr. Flemming. Essentially Dr. Beghin concluded the injury did not occur because of a clerical error, while simultaneously ignoring Mr. Hunter's condition and detailed history of his injury, the bedrock of any legitimate medical examination.

17.     York and/or Avizent expressly or implied communicated to Dr. Beghin that he should write a report stating Mr. Hunter's injury did not occur during the collapse of the building. This allegation is based in part on information and belief, and is likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

18.     After his initial on the job injury, Mr. Hunter also suffered two other on the job injuries. On March 31, 2011, Mr. Hunter also injured his back while lifting a large patient on to a gurney. Later on October 19, 2011, Mr. Hunter reinjured his neck when an object fell on his head while fighting a fire inside a burning trailer. For both of these injuries Mr. Hunter sought treatment and filed for workers' compensation benefits.

19.     Not surprisingly, after the long delay caused by York and/or Avizent's improper denial, the Industrial Commission of Arizona fully vindicated Mr. Hunter and his need for care for his on the job injury. The Judge rejected York and/or Avizent and its IME doctor's unsupported allegations, instead fully accepting the overwhelming

testimony of Mr. Hunter's treating doctors, physician assistant, and co-workers.  What this delay meant, however, was that York and/or Avizent had fraudulently delayed and denied coverage to Mr. Hunter for over two years for an injury that was obviously work related.

20.     Mr. Hunter relied on the fraudulent communication because he suffered financial loss including attorney's fees, medical care, and medical mileage.  Defendants' fraud directly caused injury to Mr. Hunter because it deprived him of benefits and caused him to pay attorney's fees, medical care, suffer emotional pain and damages.

21.     Due to wrongful denial, delay, and scheme Mr. Hunter suffered significant economic damage, humiliation, worry, distress, and continuing economic and physical damage.   Mr. Hunter struggled to sleep at night for months and experienced unnecessary worry, stress, and concern that impacted his daily activities.  Additionally, Mr. Hunter has suffered financial harm and damage to his credit.

**What York and/or Avizent Did to Firefighter Kelli Bowers**

22.     Kellie Bowers worked as a firefighter for the City of Phoenix.  During a required training exercise on August 31, 2011, Ms. Bowers' hamstring abruptly constricted, and she experienced significant pain in her legs and back.  Ms. Bowers duly reported her injury and sought treatment at the Fire Department Health Center.  Ralph Houk, Physician's Assistant, treated Ms. Bowers for the injury at the Health Center.

23.     Ms. Bowers subsequently completed the filing for a claim for workers' compensation.  But on October 24, 2011, Brian Heaton, an adjuster working for York and/or Avizent, sent a notice of claim status through the United States Mail denying all medical treatment for her on the job injury.  Mr. Heaton alleged, falsely, that the injury

spontaneously occurred and the training exercise injury was merely coincidental. This denial was a fraudulent communication because York and/or Avizent knew that Ms. Bowers was injured while at work, sought treatment for this injury, and had no valid basis for denying the claim. This claim is clearly compensable under Arizona law.

24.    Defendants sent Ms. Bowers to an Independent Medical Examination "IME." Rather than complete a valid examination, Dr. Rowley simply endorsed the "coincidental" theorizing of York and/or Avizent's adjuster. Dr. Rowley suggested that despite the clear evidence of the work related injury, Ms. Bowers back injury actually occurred spontaneously and the exercise injury was likely coincidental.

25.    Defendants expressly or implied communicated to Dr. Rowley that he should write a report stating Plaintiff was not disabled from the work related injury regardless of the clear circumstances. This allegation is based in part on information and belief, and is likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

26.    During the workers' compensation hearing, the Commission awarded benefits to Ms. Bowers for her injury. The Commission's Judge rejected the evidence of Dr. Rowley as unreliable, and instead accepted Physician Assistant Ralph Houk's documented evidence. The Commission's Judge clearly acknowledged that "the conflict in the medical evidence is resolved in favor of the opinions of Ralph Houk, P.A., as being more probably correct and well founded." Ms. Bowers' initial injury took place in 2011. York and/or Avizent fraudulently delayed and denied coverage to Ms. Bowers until well into 2012.

27.    As with the other firefighters subjected to unjustified and unnecessary

delays by York and/or Avizent, Ms. Bowers relied on the fraudulent communication because she suffered financial loss including attorney's fees, medical care, and medical mileage.  Defendant's fraud directly caused injury to Ms. Bowers because it deprived her of benefits and caused her to pay attorney's fees, medical care, suffer emotional pain and damages.  Due to wrongful denial, delay, and scheme Ms. Bowers suffered significant economic damage, humiliation, worry, distress, and continuing economic and physical damage.  Additionally, Ms. Bowers has suffered financial harm and damage to her credit.

### What York and/or Avizent Did to Firefighter Laurie Miller

28.     Laurie Miller has worked for the City of Phoenix for 20 years as a firefighter.  While on a training trip on November 14, 2011, Laurie Miller stepped on a rock and twisted her knee.  Ms. Miller received surgery on December 20, 2011.  Ms. Miller properly filed a claim for her work related injury.

29.     York and/or Avizent's Chris Garland then sent Ms. Miller a notice of claim status through the United States Mail denying medical treatment for her on the job injury.  This denial was a fraudulent communications because York and/or Avizent knew that Ms. Miller had suffered a knee injury during a training exercise, and this is and was always a clearly compensable on the job injury claim.

30.     As with other injured firefighters, Defendants sent Ms. Miller to an "IME" with York and/or Avizent's hand-picked Dr. Carter.  Dr. Carter opined that Ms. Miller's injury in 2011 did not relate to her need for surgery.  Defendants expressly or implied communicated to Dr. Carter that he should write a report stating Ms. Miller  was not disabled from the work related injury regardless of the clear circumstances.  This

allegation is based in part on information and belief, and is likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

31.     As with the other firefighters mistreated by York and/or Avizent's wrongful and unjustified denials, he the Industrial Commission of Arizona Judge confirmed Ms. Miller's right to necessary workers' compensation benefits for the 2011 injury.  The Commission's Judge completely rejected Dr. Carter's unjustified theory that the surgery was unrelated to the workplace injury, overturning York and/or Avizent's wrongful denials over a year after her initial injury.

32.     As with the other firefighters subjected to unjustified and unnecessary delays by York and/or Avizent, Ms. Miller relied on the fraudulent communication because she suffered financial loss including attorney's fees, medical care, and medical mileage.  Defendant's fraud directly caused injury to Ms. Miller because it deprived her of benefits and caused her to pay attorney's fees, medical care, suffer emotional pain and damages.  Due to wrongful denial, delay, and scheme Ms. Miller suffered significant economic damage, humiliation, worry, distress, and continuing economic and physical damage.  Additionally, Ms. Miller's pay was garnished as a result of the delay in payment of benefits, she lost her home, and her credit was damaged.

**What York and/or Avizent Did to Firefighter Brian Dimas**

33.     Brian Dimas worked as a fire truck engineer for the City of Phoenix for a number of years.  On October 8, 2011, Mr. Dimas injured his knee while coming off a fire truck during his work.  Throughout the day the pain in his knee increased dramatically.  Mr. Dimas properly reported his workplace injury and promptly sought medical treatment.

34.     On November 15, 2011, Brian Heaton, a York and/or Avizent adjuster, sent Mr. Dimas a notice of claim status through the United States Mail denying medical treatment for his on the job injury.  This denial was a fraudulent communication because York and/or Avizent knew that Mr. Dimas was injured on the job and had reported the injury to them.  This claim is and was always clearly compensable under Arizona law.

35.     Defendants sent Mr. Dimas to an "IME" with its hand-picked Dr. Carter. As with so many others, Dr. Carter simply alleged that the injury did not occur based on the incident in 2011.  Rather, he opined that Mr. Dimas had an unspecified pre-existing condition that caused Mr. Dimas' injury, while simultaneously suggesting that surgical care was unnecessary.  This allegation was in contradiction not only of the treating health care providers findings, but also of basic Arizona law confirming that an on the job aggravation of a pre-existing condition, if one even existed, was required to be acknowledged the same as a new injury.

36.     Defendant expressly or implied communicated to Dr. Carter that he should write a report stating Plaintiff was not disabled from the work related injury regardless of the clear circumstances.  This allegation is based in part on information and belief, and is likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

37.     Mr. Dimas was also examined by Dr. Lee.  Dr. Lee believed that the Mr. Dimas' injury was caused by the 2011 incident and that Mr. Dimas needed surgery to address the problem.

38.     As with the other firefighters mistreated by York and/or Avizent's wrongful and unjustified denials, the Industrial Commission of Arizona rejected the

opinion of York and/or Avizent's hand-picked examiner, Dr. Carter, and fully accepted the confirmation of his treating health care providers.  Over a year after the initial denial and rejection of benefits, the Commission overturned York and/or Avizent's wrongful denial to finally secure Mr. Dimas the surgery and medical treatment he needed.

39.    As with the other firefighters subjected to unjustified and unnecessary delays by York and/or Avizent, Mr. Dimas relied on the fraudulent communication because he suffered financial loss including attorney's fees, medical care, and medical mileage.  Defendant's fraud directly caused injury to Mr. Dimas because it deprived him of benefits and caused him to pay attorney's fees, medical care, suffer emotional pain and damages.  Due to wrongful denial, delay, and scheme Mr. Dimas suffered significant economic damage, humiliation, worry, distress, and continuing economic and physical damage.

**What York Did to Firefighter Kim Mills**

40.    Kim Mills has worked as a firefighter for the City of Phoenix for over 20 years.  In 2007, Ms. Mills underwent right shoulder surgery based on a workplace injury.  She later had two additional surgeries by Dr. Peairs on February 29, 2008 and January 15, 2009.  In November 2009, her claim was closed with permanent impairment.  Ms. Mills was recovering but still suffered from chronic problems affecting her sleep, pain, and instability.  She continued working in a modified position, but wanted to return to work full duty as a firefighter.  In 2011, Mills filed a petition to reopen her claim because her injury prevented her from sleeping and caused severe pain during activities.  Reopening should have just been a formality given the clear facts of Ms. Mill's injury and resulting impacts, including the need for further supportive medical care to bring

Ms. Mills' shoulder back to as good a condition as possible.

41.     Pat Sampson, a York and/or Avizent adjuster, denied Mills' petition to reopen.  On October 22, 2012, Sampson sent Ms. Mills a notice of claim status through the United States Mail denying medical treatment for Mills' on the job injury.  This denial was a fraudulent communication because York and/or Avizent knew that Ms. Mills was injured, sought treatment, and had no valid basis for denying the claim.  This claim is and was always clearly compensable under Arizona law.

42.     York and/or Avizent sent Ms. Mills to an "IME" with another hand-picked physician, Dr. Rockowitz.  Dr. Rockowitz opined that nothing additional or previously undiscovered existed in Mills' shoulder, and claimed that her treating physicians' evaluations should be ignored and all additional medical care stopped.  After a second examination, Dr. Rockowitz largely repeated the claims he offered after his previous exam.

43.     Defendants expressly or implied communicated to Dr. Rockowitz that he should write a report stating Ms. Mills was not disabled from the work related injury regardless of the clear circumstances.  This allegation is based in part on information and belief, and is likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

44.     As with the other firefighters wrongfully denied and delayed workers' compensation benefits by York and/or Avizent, the Industrial Commission of Arizona rejected York and/or Avizent's denials and confirmed Ms. Mills' need for  supportive care for the on the job injury.  The Commission's Judge also rejected the repeated claims of York and/or Avizent's chosen IME physician, Dr. Rockowitz.

45.     After the hearing, Ms. Mills suffered another workplace injury.  On August 7, 2012, while lifting ladders at work, Ms. Mills suffered a rotator cuff tear and Biceps tendon tear.  Eileen Saige, a York and/or Avizent Adjuster, sent Ms. Mills a notice of claim status through the United States Mail denying medical treatment for Mills' on the job injury. This denial was a fraudulent communication because York and/or Avizent knew that Ms. Mills was injured, sought treatment, and had no valid basis for denying the claim.  This claim is and was always clearly compensable under Arizona law.

46.     Ms. Mills was once again forced to hire an attorney to receive the benefits she was owed.  Rather than wait for York and/or Avizent's delay and denial, on September 13, 2012, Ms. Mills received shoulder surgery through her own private insurance.  Finally six months after her surgery, York and/or Avizent withdrew their denial because of the clear evidence that Ms. Mills was injured on the job.

47.     As with the other firefighters subjected to unjustified and unnecessary delays by York and/or Avizent, Ms. Mills relied on the fraudulent communications because she suffered financial loss including attorney's fees, medical care, and medical mileage.  Defendant's fraud directly caused injury to Ms. Mills because it deprived her of benefits and caused her to pay attorney's fees, medical care, suffer emotional pain and damages.  Due to wrongful denial, delay, and scheme Ms. Mills suffered significant economic damage, humiliation, worry, distress, and continuing economic and physical damage.  Additionally, Ms. Mills has suffered financial harm, damage to her credit, and lost her family's home.

**What York and/or Avizent Did to Firefighter Anthony Soza**

48.     Anthony Soza has served as a firefighter for the City of Phoenix since

- 15 -

1993.   In September 2010, while Mr. Soza was working a mountainside rescue, he experienced pain and swelling in his knee. After icing the knee, he continued working his next shift.  Within days of this on the job episode, on October 1, 2010, Mr. Soza was engaged in fighting an apartment complex fire.  While fighting the fire, which included pulling a hose over uneven ground, knocking down a door, and rolling up a heavy fire hose at the scene, Mr. Soza's knee again swelled up to the point that he could barely walk.  Mr. Soza then filed a claim for workers' compensation benefits for his knee injury.  On October 12, 2010, Soza also filed a claim for an injury to his left knee from the October 1, 2010, episode.

49.      On November 3, 2010, Kelly McLeod, a York and/or Avizent adjuster, sent Mr. Soza a notice of claim status through the United States Mail denying all medical treatment for his on the job injuries.  Mr. Soza had received previous injuries to his knees on the job and treatment that allowed him to return to full duty.  York and/or Avizent 's unjustified denial for the new injuries was in contradiction not only of the treating health care providers findings, but also of basic Arizona law confirming that an on the job aggravation of a pre-existing condition, if one even existed, was required to be acknowledged the same as a new injury  This denial was a fraudulent communication because York and/or Avizent knew that Mr. Soza was injured while fighting a fire, sought treatment, and had no valid basis for denying the claim.  This claim is and was always clearly compensable under Arizona law.  On April 2, 2011, Chris Garland also sent Mr. Soza a notice of claim status through the United States Mail denying medical treatment for his on the job injuries.

50.      As with many other injured firefighters, York and/or Avizent sent Mr.

Soza to an "IME", with its hand-picked Dr. Rockowitz.  Again ignoring the basic requirements of how aggravation injuries are to be evaluated, as well as treating physician findings, Dr. Rockowitz attributed Mr. Soza's injury to his prior knee injuries. Dr. Rockowitz even suggested that the new on-the-job aggravation injuries experienced by Mr. Soza were to be ignored, and that any "marginal" need for surgery must be related only to an injury over a decade earlier.

51.     York and/or Avizent expressly or implied communicated to Dr. Rockowitz that he should write a report stating Mr. Soza was not disabled from the work related injury regardless of the clear circumstances.  This allegation is based in part on information and belief, and is likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

52.     As with the other firefighters wrongfully and unjustifiably delayed necessary benefits by York and/or Avizent, the Industrial Commission of Arizona rejected York and/or Avizent and its hand-picked Dr. Rockowtiz's theories, fully and finally confirming that the October 1, 2010 injury claim was valid and recoverable.

53.     As with the other firefighters subjected to unjustified and unnecessary delays by York and/or Avizent, Mr. Soza relied on the fraudulent communication because he suffered financial loss including attorney's fees, medical care, and medical mileage.  Defendant's fraud directly caused injury to Mr. Soza because it deprived him of benefits and caused him to pay attorney's fees, medical care, suffer emotional pain and damages.  Due to wrongful denial, delay, and scheme Mr. Soza suffered significant economic damage, humiliation, worry, distress, and continuing economic and physical damage.

**What York and/or Avizent Did to Firefighter Bruce Campbell**

54.     Bruce Campbell, a longtime firefighter for the City of Phoenix was injured on March 13, 2011, while performing two mountain rescues.  As with Mr. Soza, Mr. Campbell had been previously injured, treated, and released to full duty long before the new 2011 aggravation injury.  As a result of his new re-injury on the job, his treating surgeon, Dr. Lucero, confirmed the necessity of a timely complete knee replacement.

55.     Unfortunately, on September 1, 2011, York and/or Avizent adjuster Eileen Price sent a notice of claim that terminated all temporary compensation benefits and medical benefits with a permanent disability effective August 1, 2011.  This denial was a fraudulent communication because York and/or Avizent knew that Mr. Campbell was injured in the scope of his employment, reported the injury, and York and/or Avizent had no valid basis for denying the claim.   This claim is and was always clearly compensable under Arizona law.

56.     As with many other injured firefighters, York and/or Avizent sent Mr. Campbell to an "IME", again with its hand-picked Dr. Rockowitz.  Again ignoring the basic requirements of how aggravation injuries are to be evaluated, as well as treating physician findings, Dr. Rockowitz attributed Mr. Campbell's injury to his prior knee injuries.

57.     Defendant expressly or implied communicated to Dr. Rockowitz that he should write a report stating Mr. Campbell was not disabled from the work related injury regardless of the clear circumstances.  This allegation is based in part on information and belief, and is likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

58.     As with the other firefighters wrongfully and unjustifiably delayed necessary benefits by York and/or Avizent, the Industrial Commission of Arizona rejected York and/or Avizent and its hand-picked Dr. Rockowtiz's theories, fully and finally confirming the treating physician's findings.  The Commission Judge event noted that the "the conflict is resolved by accepting the opinions of Michael Lucero, that the applicant's need for a right total knee replacement is causally related to the industrial injury."

59.     As with the other firefighters subjected to unjustified and unnecessary delays by York and/or Avizent, Mr. Campbell relied on the fraudulent communication because he suffered financial loss including attorney's fees, medical care, and medical mileage.  Defendant's fraud directly caused injury to Mr. Campbell because it deprived him of benefits and caused him to pay attorney's fees, medical care, suffer emotional pain and damages.  Due to wrongful denial, delay, and scheme Mr. Campbell suffered significant economic damage, humiliation, worry, distress, and continuing economic and physical damage.

**What York and/or Avizent Did To Brian Saylor**

60.     Brian Saylor worked as a firefighter for the City of Phoenix for over 8 years.  During a required training exercise on February 18, 2012, Mr. Saylor received an emergency call to a fire.  While responding to the emergency, Mr. Saylor tripped and fell down a flight of stairs and landed directly on his knees.  Mr. Saylor immediately felt pain in his knees and back.  Yet Mr. Saylor continued to the emergency in order to fight the fire.  Mr. Saylor timely reported his injury on April 2, 2012, and sought treatment for his injuries.

61.     On May 1, 2012, Brian Heaton, a York and/or Avizent adjuster, sent a notice of claim status through the United States Mail denying all medical treatment for Mr. Saylor's on the job injury.  York and/or Avizent alleged, falsely, that the fall down the stairs and landing on his knees did not injure or aggravate the condition of his knees. This denial was a fraudulent communication because York and/or Avizent knew that Mr. Saylor fell down a flight of stairs while at work, tore his meniscus in both knees, sought treatment for this injury, and had no valid basis for denying the claim.  This claim is and was clearly compensable under Arizona law.

62.     As with so many other improperly denied injury claims, Defendants sent Mr. Saylor to an "IME" with its hand-picked Dr. Rockowitz.  Rather than complete a valid examination, Dr. Rockowitz simply endorsed York and/or Avizent's theory that the fall did not impact Mr. Saylor's torn meniscus.  Again ignoring the basic requirements of how aggravation injuries are to be evaluated, as well as treating physician findings, Dr. Rockowitz attributed Mr. Campbell's documented physical injury solely to Mr. Saylor's prior, pre-existing condition.

63.     Defendant expressly or implied communicated to Dr. Rockowitz that he should write a report stating Plaintiff was not disabled from the work related injury regardless of the clear circumstances.  This allegation is based in part on information and belief, and is likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

64.     Exactly like the other firefighters wrongfully and unjustifiably delayed necessary benefits by York and/or Avizent, the Industrial Commission of Arizona rejected York and/or Avizent and its hand-picked Dr. Rockowitz's theories, fully and

finally confirming the treating physician's findings.   The Commission's Judge stated "that the applicant's fall exacerbated his pre-existing knee problems and contributed to the need for surgery."

65.     As with the other firefighters subjected to unjustified and unnecessary delays by York and/or Avizent, Mr. Saylor relied on the fraudulent communication because he suffered financial loss including attorney's fees, medical care, and medical mileage.   Defendant's fraud directly caused injury to Mr. Saylor because it deprived him of benefits and caused him to pay attorney's fees, medical care, suffer emotional pain and damages.     Due to wrongful denial, delay, and scheme Mr. Saylor suffered significant economic damage, humiliation, worry, distress, and continuing economic and physical damage.   Additionally, Mr. Saylor has suffered financial harm and damage to his credit.

**What York and/or Avizent Did To Police Detective Joi Klages**

66.     Joi Klages worked as a detective for the Police Department for the City of Phoenix.   Ms. Klages was transporting evidence in her vehicle, when she was struck by another motor vehicle.   Ms. Klages immediately felt pain in her lower back.   But because she was concerned about the chain of custody of the evidence, Ms. Klages bypassed the emergency room to ensure the safe passage of the evidence.   Ms. Klages timely reported her injury and initially received a fusion surgery of her L5-SI in June 2010.

67.     After her surgery, Ms. Klages' treating physician placed her on a no-work restriction and concluded that Ms. Klages needed an additional back fusion surgery.   But on August 30, 2011, Lesia Fejarang, a York and/or Avizent adjuster sent a notice of claim status through the United States Mail closing Ms. Klages' claim for benefits for her on-

the-job injury. York and/or Avizent alleged, falsely, that Ms. Klages was released to work. This denial was a fraudulent communication because York and/or Avizent knew that Ms. Klages was not capable of working, suffered a severe back injury, needed additional surgery, and had no valid basis for denying the claim.  This claim is and was clearly compensable under Arizona law.

68.     York sent Ms. Klages to an IME.  But in this case, the IME confirmed the need for her surgery.  In fact the Industrial Commission Award confirmed that the treating physician and the IME doctor both "recommend surgery related to the industrial accident."  In addition, the Commission found "the applicant credible and resolve any conflicts in the evidence in her favor."

69.     Unfortunately even after the award, York still refused to pay benefits for Ms. Klages' claim.  York falsely determined that despite the prior ICA award for surgery, Ms. Klages was not entitled to benefits for that period.  This denial was a fraudulent communication because York and/or Avizent knew that Ms. Klages was not capable of working, that the ICA had already granted her surgery, and had no valid basis for denying the claim.  This claim is and was clearly compensable under Arizona law.

70.     Once again, the Industrial Commission of Arizona rejected York and/or Avizent theories, fully and finally confirming the treating physician's findings.  Finally, Ms. Klages was awarded her owed benefits.

71.     As with the firefighters subjected to unjustified and unnecessary delays by York and/or Avizent, Ms. Klages relied on the fraudulent communication because she suffered financial loss including attorney's fees, medical care, and medical mileage.

Defendants' fraud directly caused injury to Ms. Klages because it deprived her of benefits and caused her to pay attorney's fees, medical care, suffer emotional pain and damages.  Due to wrongful denial, delay, and scheme, Ms. Klages suffered significant economic damage, humiliation, worry, distress, and continuing economic and physical damage.  In addition due to the delay in surgery, Ms. Klages suffered physical harm including a cyst.  Eventually because of her injury and delay of treatment, Ms. Klages was forced to take an early retirement.  Additionally, Ms. Klages has suffered financial harm and damage to her credit.

## II.   **PARTIES**

72.    Plaintiffs, Laurie Miller, Brian Dimas, Kim Mills, Anthony Soza, Bruce Campbell, Michael Schamadan, Kellie Bowers, Tim Hunter, Joi Klages, and Brian Saylor, reside in Arizona.  All plaintiffs are employees of the City of Phoenix and work in the Fire Department or the Police Department.

73.    Defendant YORK RISK SERVICES GROUP, ("York"), formerly operating as The Frank Gates Service Company d/b/a Avizent Risk ("Avizent") is a foreign corporation adjusting insurance claims made by Arizona employees on behalf of THE CITY OF PHOENIX ("Phoenix") for coverage under the Arizona Workers' Compensation Act, A.R.S. § 23-901, *et seq.*  York conducts business in Maricopa County, Arizona. With information and belief, York has assumed all assets and liabilities of its predecessor the Frank Gates Service Company when it purchased the Frank Gates Service Company on December 20, 2011.

a.    Service of process may be effected on York by certified mail, return receipt requested, to its registered agent, CORPORATION SERVICE COMPANY, 2338 W.

Royal Palm Rd., Ste. J, Phoenix, Arizona 85021.

b.      All acts complained of York herein were committed by York directly, or under its supervision and direction.

c.      All acts complained of York herein that were committed by and through its authorized servants, employees, and agents, were committed while acting within the scope of their employment, service agreement, and agency, in concert with Defendant York.

d.      All acts complained of York herein that were committed through any of its servants, employees, or agents, were also ratified by York.

e.      York is vicariously liable for all acts complained of herein that were committed by or through any authorized servants, employees, or agents of York.

74.      Defendant the Frank Gates Service Company d/b/a Avizent Risk, ("Avizent") with information and belief was purchased by York Risk Services on December 10, 2011, and is a foreign corporation adjusting insurance claims made by Arizona employees on behalf of THE CITY OF PHOENIX ("Phoenix") for coverage under the Arizona Workers' Compensation Act, A.R.S. § 23-901, *et seq.* Avizent conducts business in Maricopa County, Arizona.

a.   Service of process may be effected on Avizent by certified mail, return receipt requested, to its registered agent, CORPORATION SERVICE COMPANY, 2338 W. Royal Palm Rd., Ste. J, Phoenix, Arizona 85021.

b.   All acts complained of Avizent herein were committed by Avizent directly, or under its supervision and direction.

c.   All acts complained of Avizent herein that were committed by and through its

authorized servants, employees, and agents, were committed while acting within the scope of their employment, service agreement, and agency, in concert with Defendant Avizent.

d.  All acts complained of Avizent herein that were committed through any of its servants, employees, or agents, were also ratified by Avizent.

e.  Avizent is vicariously liable for all acts complained of herein that were committed by or through any authorized servants, employees, or agents of Avizent .At all times and in all actions plead in this complaint; York and/or Avizent were acting as agent for, or in concert with certain Phoenix administrators.  York and/or Avizent were third party administrators (TPA) required to adjust and administer its workers' compensation claims and were supposed to exercise independent and unbiased investigation and handling of injury claims.

## **VENUE & JURISDICTION**

75.     Federal question jurisdiction is conferred by Plaintiffs' claims under the Federal Racketeer Influence and Corrupt Organizations Act, 18 USC §1961 et seq (RICO).  Diversity of citizenship jurisdiction is conferred by 28 USC §1332 (Plaintiffs are citizens of Arizona, defendants are citizen of different states then Arizona (principal place of business and incorporation) and the amounts in controversy exceed $75,000).

76.     Venue is properly laid in the Federal District Court for the District of Arizona because plaintiffs reside in that district and defendants do business in person and through their agents and representatives in that district, in Maricopa County.

## III.   **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

- 25 -

77.     This case is based upon a long term and ongoing scheme to delay and deny Arizona workers' compensation benefits to plaintiffs when York, Avizent, and Phoenix knew that they did not have a sound basis under the law and facts of each case for doing so.

78.     The activities affected interstate commerce in several ways including that:

    a.   York and/or Avizent operate in interstate commerce;

    b.   The mails, telephones, fax and internet communications are all utilized in the course of the activities complained of;

    c.   Denial of benefits caused economic effects on medical service providers and other medical insurance companies many of whom operate in interstate commerce.

79.     Phoenix employed each of the plaintiffs.

80.     Phoenix complied with its obligations under Arizona law to provide firefighters and police employed by the City workers' disability compensation insurance by self-insuring.

81.     York and/or Avizent are TPAs (third party administrators) that adjusted workers' compensation claims made by Phoenix first responders.

82.     York and/or Avizent acted as agent for Phoenix with regard to the handling of workers' compensation claims.

83.     Decisions regarding paying claims or terminating payment were made jointly by York, Avizent, and Phoenix, or were made by York and/or Avizent after consulting with Phoenix or were ratified by Phoenix after being made by York and/or Avizent.

84.     In every instance complained of herein York, Avizent, and Phoenix, as part of an ongoing enterprise and scheme more particularly described in the remaining paragraphs refused to pay workers' compensation benefits to workers in bad faith.  They denied benefits without reasonable investigation and without forming a good faith belief that the standards for compensable disability had not been met when evidence of entitlement to benefits had been provided by the workers.  Instead defendants:

a.      acted with knowledge that the methods they were using to investigate claims, to have workers examined by physicians of their choice, to decide whether a disability was compensable and to report the results of the investigation to workers, employers, the Industrial Commission of Arizona, medical providers and others ignored evidence of compensability and produced false evidence that the workers were not entitled to compensation.

b.      Defendants also acted in bad faith by ignoring information that the methods they used to investigate claims, have workers examined pursuant to statute, and to decide compensability did not accurately reflect the standards for compensability under the Workers' Disability Compensation Act.

85.     The actions of York and/or Avizent as described generally above and with greater particularity below violated RICO, 18 U.S.C. 1962 (c) and (d) in the following ways:

a.   York and/or Avizent fraudulently denied benefits to workers who York and/or Avizent knew were entitled to workers' compensation benefits under existing law, in ways more particularly described in the remaining paragraphs of this complaint;

b.   This fraud was accomplished in part by use of the United States mail

and by electronic communications in violation of 18 USC 1341 and 1343;

c. Some of these electronic and mail communications contained fraudulent misrepresentations, in that they communicated alleged facts and opinions about the medical condition of the workers and/or about the causes of those conditions and their relationship to employment that York and/or Avizent knew were false or as to which the York and/or Avizent knew there was no genuine basis for the opinions expressed.

d. Some of the electronic and mail communications were not in themselves false or fraudulent but were employed in the scheme to defraud, such as letters and notices scheduling appointments with physicians for so-called "independent medical examinations," when the defendants, their agents and attorneys knew from ample past experience that the examinations would not be conducted properly and/or in good faith but would instead be designed to form a basis for denying benefits irrespective of the worker's medical condition and its compensability;

e. York and/or Avizent knew the doctor examiners were not "independent" because they knew the doctors were financially dependent to a significant degree on companies defending insurance claims (including employers, insurers and TPAs);

f. York, Avizent, and their agents and attorneys, deliberately selected doctors to obtain a medical opinion which defendants either directed to be negative as to critical elements of a workers' compensation claim

relating to disability or relationship to employment or knew from ample experience with such doctors would state negative opinions on these elements irrespective of the true facts. These allegations are based in part on information and belief, and is likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

    g.  Phoenix, York, and Avizent systematically as part of their scheme to defraud denied benefits by failing to honestly assess evidence that a claimant had a work related disability, and or by failing to honestly investigate and obtain evidence relevant to whether a claimant had a work related disability.

86. In each of the cases in which they terminated or denied benefits, York and/or Avizent, by themselves and through and their agents and attorneys, acted fraudulently, in a scheme to defraud which used the mails and wires in violation of 18 U.S.C. 1961, et seq, by:

    a.  failing to investigate honestly whether a claimant was entitled to benefits under Arizona law before they denied or terminated benefits;

    b.  deliberately seeking opinions from doctors York and/or Avizent knew would deny compensability or otherwise support a decision to pay less than what was actually owed;

    c.  deliberately failing to obtain and to give honest consideration to reports and records of a claimant's treating doctors, and any other relevant information.

87. York and/or Avizent's intentional failures to investigate honestly whether a

claimant's disability was work-related under any of the relevant provisions of Arizona law, and their deliberate failure to give honest consideration to the records and reports of a claimant's treating doctors and any other relevant medical records or information, and to honestly weigh those records and reports against the report of a doctor chosen by defendants to examine a claimant was mail and wire fraud in violation of 18 U.S.C. 1341, 1343 because the mails and wires were used in furtherance of the scheme to defraud.

88.     The predicate acts and violations of RICO alleged herein were committed by one or more of the following enterprises:

a. The workers' compensation personnel at the workers' compensation claims departments at York and/or Avizent who handled Arizona workers' compensation claims and personnel at the City of Phoenix associated in fact formed an "enterprise" for purposes of the Racketeer Influenced and Corrupt Organizations Act (RICO) claims in this case. Because they worked together regularly in adjusting and handling workers' compensation claims for Arizona workers, they formed an enterprise.

b. Additionally or alternatively, the following persons or entities are an "enterprise" which acted to defraud Plaintiffs of their workers' compensation benefits:

i. the workers' compensation claims personnel at York and/or Avizent who handled Arizona claims;

ii. the workers' compensation claims personnel at York and/or Avizent who handled Phoenix claims and the personnel at the City of

Phoenix responsible for approving or ratifying decisions made by York and/or Avizent personnel;

iii. the workers' compensation claims personnel at York and/or Avizent plus the doctors employed by York and/or Avizent to examine the plaintiffs, associating in fact in the handling of workers' compensation claims.

89.    Each enterprise was an organization which existed not only for the purpose of defrauding Plaintiffs of their workers' compensation benefits; the enterprise engaged in other activities, such as the administration of workers' compensation claims and the examination of individuals claiming workers' compensation and other benefits.   Each enterprise has existed for many years, and in each enterprise different persons had different roles concerning the conduct of the enterprise, not limited to the commission of the fraudulent acts complained of herein.

90.    Two or more enterprises may have acted together to defraud one or more Plaintiffs of their workers' compensation benefits.

91.    By means of the actions described in the complaint, York and/or Avizent conspired to violate 18 U.S.C. 1962, and conspired with one or more other parties or the employees of the City of Phoenix to violate 18 U.S.C. 1962.  York, Avizent, and Phoenix through the actions of their employees involved in the handling of Arizona workers' compensation claims, and physicians chosen by Phoenix, York, and Avizent to examine claimants, agreed to participate in the commission of the predicate acts which are alleged in this complaint.   Such actions of conspiracy proximately caused or contributed to Plaintiffs' damages, as a result of which defendants are liable to Plaintiffs under section

1962(d).  The allegations in this paragraph are based on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

92.    With regard to the claims of the individual plaintiffs and all other victims of the scheme, Defendants used the mail and wires for interstate communications in effectuation of their scheme, demonstrating and involving a threat of continuing racketeering activity against employees of Phoenix who are entitled to Arizona workers' compensation benefits.  Defendant's actions violated 18 U.S.C. 1341, 1343. The claims of each plaintiff arise under 18 U.S.C. §§1961, 1962, 1964 and 1965.  The allegations made in the following individual claims are based on the facts alleged herein, and in part on information and belief and are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

93.    Each and every one of the forgoing common allegations is intended to apply to all the counts of this complaint as though fully restated in each.

IV.    **FIRST CAUSE OF ACTION---**
       **FRAUD IN VIOLATION OF 18 U.S.C. §§1961, 1962, 1964 and 1965**

94.    Plaintiffs re-allege and incorporate by reference the allegations of ¶¶ 1-87 of this Petition as if fully set forth herein.

95.    As set forth in detail above, each of the Plaintiffs suffered a work related injury.

96.    For each Plaintiff, York and/or Avizent acting in concert with one or more of the enterprises discussed above refused to pay benefits due to the Plaintiffs under Arizona law.

97.     These refusals were supported by fraudulent communications in violation of 18 USC sections 1341 and 1343 that claimed that the injury was not work-related or otherwise not compensable.

98.     For each Plaintiff, with the exception of Michael Schamadan and Joi Klages, York and/or Avizent sent Plaintiffs to doctors whom York and/or Avizent knew would support a denial of payment.  These doctors have a long-standing business relationship with York and/or Avizent.  These doctors, who operated as part of one or more of the enterprises discussed above, ignored the evidence of compensability and did in fact provide York and/or Avizent with opinions supporting York and/or Avizent's refusal to pay.  This allegation is based in part on information and belief, and is likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

99.     York and/or Avizent knew or must have known that the opinions of these doctors were an unreliable and unreasonable basis for a refusal to pay benefits because these doctors were biased due to the amount of money they had and were going to receive in the future for medical examinations and testimony in workers' compensation cases.  This allegation is based in part on information and belief, and is likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

100.    York and/or Avizent likewise knew or must have known that the opinions of these doctors were an unreliable and unreasonable basis for a refusal to pay benefits because of the opinions of Plaintiffs' treating physician that supported compensability.

101.    York and/or Avizent's fraud directly caused injury to Plaintiffs because it deprived them of workers' compensation benefits and because it caused them the expense of paying attorney fees and medical care.  York and/or Avizent's fraud further

1
2

caused plaintiff to lose wages and other benefits from the City of Phoenix, caused injury

to credit and caused significant emotional distress damages a described above.

3
4

**V.      SECOND CAUSE OF ACTION---**
**AIDING AND ABETTING BREACH OF THE DUTY OF GOOD FAITH**
**AND FAIR DEALING**

5
6
7

102.    Phoenix breached the duty of good faith and fair dealing it owed to

Plaintiffs as described above.

8
9
10
11
12

103.    York and/or Avizent knew that, after an adequate investigation, Plaintiffs'

claims were not fairly debatable, that Phoenix denied or delayed paying benefits owed

to Plaintiffs and that Phoenix knew or recklessly disregarded the lack of a reasonable

basis for refusing to pay benefits owed to Plaintiffs.

13
14

104.    York and/or Avizent, through its adjustment of the claim, substantially

assisted Phoenix in denying the claim without a reasonable basis.

15
16
17

105.    York and/or Avizent therefore aided and abetted Phoenix's breach of the

duty of good faith and fair dealing it owed to Plaintiffs.

18
19

106.    Plaintiffs were damaged as a result of York and/or Avizent's aiding and

abetting Phoenix's breach of the duty of good faith and fair dealing it owed to Plaintiffs.

20
21

**VI.     THIRD CAUSE OF ACTION---**
**MICHAEL SCHAMADAN'S CLAIM FOR LOSS OF CONSORTIUM**

22
23
24
25
26

107.    York and/or Avizent aided and abetted Phoenix's breach of the duty of good

faith and fair dealing owed to Plaintiff Brandi Schamadan and Intentionally Inflicted

Emotional Distress upon Brandi Schamadan, which caused physical and emotional

injuries to Ms. Schamadan and her estate.

27
28

108.    At all relevant times, Michael Schamadan was married to Brandi

Schamadan.

109.    As a result of the physical and emotional injuries suffered by his wife, Michael Schamadan also suffered adverse effects on the emotional, physical, and financial relationship with his wife.   This impact included deprivation of love, affection, consortium, companionship, protection, discipline, comfort and guidance.

110.    Michael Schamadan is therefore entitled to recover from York and/or Avizent the damages from his loss of consortium

## VII.    FOURTH CAUSE OF ACTION---<br>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br>AS TO MICHAEL SCHAMADAN ONLY

111.    York and/or Avizent intentionally and/or recklessly caused Michael Schamadan severe emotional distress through its conduct.

112.    Defendants knew or recklessly disregarded that its conduct was substantially certain to cause Michael Schamadan to suffer extreme and emotional distress.

113.    Defendants' conduct caused Michael Schamadan to suffer severe emotional distress.

114.    Defendants' conduct was so outrageous and so extreme in danger that the conduct went beyond the possible bounds of decency, and was atrocious and utterly intolerable in a civilized community.

115.    Defendants knew that Michael Schamadan's spouse Brandi Schamadan suffered significant pain and needed therapy, medication, and other treatment. Defendants also knew that both Michael and Brandi Schmadan were emotionally vulnerable during this very difficult period in their lives.   Yet Defendants repeatedly denied and delayed Brandi Schamadan's owed benefits.

116.     Defendants also knew that Brandi Schamadan was exposed to significant workplace injury risks.  Yet, Defendants engaged in a pattern of criminal racketeering to fraudulently deny the Brandi Schamadan benefits.  York and/or Avizent then forced the Brandi Schamadan to file hearings and litigate before the Industrial Commission in order to obtain their owed benefits.

117.     Indeed as the administrators of the Brandi Schamadan's workers compensation benefits, a special relationship existed between York, Avizent, and Brandi Schamadan.  Defendants abused that position of power by intentionally denying medical treatment, and benefits to Brandi Schamadan, in order to benefit Defendants financially while knowingly injuring Michael Schamadan.

VIII.   PRAYER FOR RELIEF

Plaintiffs respectfully pray that Plaintiff have judgment entered against Defendants and for an award of damages as follows:

a.     For compensatory damages for physical pain and suffering, mental and emotional distress, anxiety, and all other general damages alleged and proved at the time of trial all tripled in accordance with RICO;

b.     Recovery of expert witness fees;

c.     Recovery of attorney fees;

d.     Taxable costs incurred herein;

e.     Pre- and post-judgment interest;

f.     punitive damages; and

g.     For all such other and further relief, at law or in equity, to which Plaintiffs may be entitled.

Dated this 26th day of June, 2014.

Respectfully submitted,

DOYLE RAIZNER LLP

MICHAEL PATRICK DOYLE
State Bar No. 029400
KEVIN WEIN
State Bar No. 022752
2929 East Camelback Rd., Suite 126
Phoenix, Arizona 85016
Phone:  (480) 447-2494
Fax:  (480) 685-5005
mdoyle@doyleraizner.com
kwein@doyleraizner.com

ATTORNEYS FOR PLAINTIFFS

CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of June, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing thereby serving all parties of record.

MICHAEL PATRICK DOYLE

1

## JURY DEMAND

2

   *Plaintiffs hereby demand a trial by jury, a right enshrined in the Constitution of the United States of America and of the State of Arizona and preserved by the sacrifices of many.*

3

4

5

6

_____

7

Michael Patrick Doyle

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 38 -