UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| LAURIE MILLER, BRIAN DIMAS, KIM MILLS, ANTHONY SOZA, BRUCE CAMPBELL, KELLIE BOWERS, TIM HUNTER, BRIAN SAYLOR, MICHAEL SCHAMADAN, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF HIS WIFE, BRANDI SCHAMADAN, AND JOI KLAGES,<br><br>Plaintiffs,<br><br>vs.<br><br>YORK RISK SERVICES GROUP; THE FRANK GATES SERVICE COMPANY D/B/A AVIZENT RISK,<br><br>Defendants. | 2:13-cv-1419 JWS<br><br>ORDER AND OPINION<br><br>[Re: Motions at Docket 554, 557, 607] |

## I. MOTIONS PRESENTED

At docket 554 Defendant filed a motion for a protective order regarding the Independent Medical Examination ("IME") reports the court ordered it to produce at docket 504, as well as related discovery requests subsequently made by Plaintiffs. At docket 557 Defendant filed a separate motion for a protective order regarding the reports and summaries the court ordered it to produce at 504. Plaintiffs filed a

combined response to Defendant's motions and motion to compel production of other discovery materials. The combined response/motion was originally filed at docket 558, but was later refiled under seal at docket 607. Defendant filed its combined reply to its motions and its response to Plaintiffs' motion at docket 567. Plaintiffs' reply is at docket 601. Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

The basis for Plaintiffs' lawsuit and a detailed description of the dispute is located at docket 23. The parties are familiar with the background of the case, and it need not be repeated here. For purposes of the discovery motions at issue here, readers are directed to the order at docket 504, where the court found that York failed to put forth any evidence to support its assertion that complying with Plaintiffs' discovery requests would be too burdensome. The court then directed York to produce "any [IME] reports authored by Drs. Rockowitz, Beghin, Carter, and Rowley from 2009 to July 2013 in connection with City employees' workers' compensation claims" and "any reports or summaries exchanged either internally or with third-parties between 2009 and July 2013 that have to do with the resolution of workers' compensation claims for the City and any reports or summaries dealing with the reduction of claim pay-outs between 2009 and July 2013." The court instructed York to be prepared to explain and support the efforts it made to search for documents in the event of subsequent motion practice.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(b)(1) provides for liberal discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

claim or defense."[1] Relevance for purposes of discovery is defined broadly; "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[2] The court must limit the requested discovery if it is shown to be "unreasonably cumulative or duplicative;" if "the party seeking the discovery has had ample opportunity to obtain the information;" or if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."[3] Additionally, Rule 26(c)(1) permits the court with good cause to limit discovery in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

On a motion to compel, the party seeking to compel discovery has the initial burden of establishing that its request satisfies the relevancy requirements of Rule 26(b).[4] In turn, the party opposing discovery has the burden to demonstrate that discovery should not be allowed due to burden or cost and must explain and support its objections with competent evidence.[5] With respect to electronically stored information:

---

[1] Fed. R. Civ. P. 26(b)(1).

[2] Fed. R. Civ. P. 26(b)(1).

[3] Fed. R. Civ. P. 26(b)(2)(C).

[4] Fed. R. Civ. P. 26(b)(1).

[5] *See Lind v. United States,* No. 13-cv-032, 2014 WL 2930486, at * 3 (D. Ariz. June 30, 2014); *Integrated Global Concepts, Inc. v. j2 Global, Inc.*, No. 5:12-cv-03434, 2014 WL 232211, at *1 (N.D. Cal. Jan. 21, 2014).

A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.[6]

## IV.  DISCUSSION

**A. IME reports from 2009 through 2011.**

As noted above, at docket 504 the court ordered York to produce "copies of any [IME] reports authored by Drs. Rockowitz, Beghin, Carter, and Rowley from 2009 to 2013 in connection with the City employees' workers' compensation claims." The court concluded that those particular IME reports were relevant for purposes of discovery because information about how the specified doctors sided with York could reasonably lead to statistical evidence relevant to Plaintiffs' claims. In an effort to comply with the court's order, York learned that in 2013 it had previously complied IME data from January 2012 through May 2013 for the City of Phoenix. The data included the cost of IMEs, the dates the IMEs were performed, and the doctors who performed them. Based on that data, York was able to identify which claims involved IMEs by the four doctors from January 2012 through May 2013 and then locate those files and turn over the doctors' IME reports inside the files. There were 61 reports produced in total.

York now asserts that identifying the claim files that might contain an IME report authored by one of the four doctors prior to 2012 is too burdensome. York provided an

---

[6]Fed. R. Civ. P. 26(b)(2)(B).

affidavit from Joseph Tracey who worked on compiling the IME data for the City of Phoenix in 2013. He states that to repeat the task of gathering the same data from 2009 through 2011 would be too burdensome. He indicates that the specific information ordered to be produced cannot be located simply by employing a global search of electronic data. Instead, it can only electronically search payment data to isolate at least some of the files that involved IMEs. The details surrounding those IMEs, such as which doctor performed the examination, can only be discerned by manual review of the files. He explains that back in 2013 when they gathered IME data for the City, because of time and cost concerns, he contacted the IME vendors and requested that they locate and make a list of the individual doctors who performed each IME that was arranged through their services. He states that he had no control over how quickly the vendors completed their search and that it eventually took the vendors two weeks to go through over 300 files and identify the doctors involved.  For the search at issue here, York has been able to use payment data to narrow down the potentially relevant claim files to around 800, although the supporting evidence Defendant submitted indicates that it is impossible to say whether this number accurately reflects all the IMEs that took place during the applicable time period. York indicates that, given its prior experience in isolating data from the files, it will take over 200 hours to fully comply with the court's order and identify which files contain IME reports by the four doctors.

 York argues that the time and effort required to manually review 800 files and then redact the reports located in those files is far too burdensome given the needs of the case and the relevance of the data. In support, York cites to data gathered from the 61 reports it was able to locate and determined that, except for Dr. Rockowitz, the

doctors involved in Plaintiffs' claims more often than not favored claimants. Dr. Rockowitz sided with claimants a quarter of the time. The statistical data derived from the 61 reports located thus far does not appear to be highly relevant to proving Plaintiffs' claims. Given the data known and the burden described, the court concludes that the burden outweighs its likely benefit.

**B. Emails discussing Drs. Rockowitz, Beghin, Carter, and Rowley**

Defendant also asks that the court issue a protective order regarding Plaintiffs' request for all "emails or other communications related to the use of [Drs. Rockowitz, Beghin, Carter, and Rowley] to perform [IMEs]." Plaintiffs argue that the requested documents are relevant for purposes of discovery, particularly in light of the court's order at docket 504. However, the court notes that its order at docket 504 did not address emails discussing the four doctors for IMEs. It only required York to produce IME reports authored by the four doctors because the reports could lead to admissible statistical data. Moreover, York has demonstrated that it tried to comply with the request and could only narrow down the potentially responsive emails—that is, emails containing the names Rockowitz, Beghin, Carter, and Rowley—to 11,516.[7] The amount of time it took to narrow the emails down that far demonstrates that further winnowing would be unduly burdensome.[8] Plaintiffs merely speculate that the emails could contain some relevant information. While it is possible that the emails could reveal some relevant piece of information that has not already been discovered, York has convinced

---

[7]See doc 554 at pp. 10-11.

[8]Id. at p. 11.

the court that the likelihood of locating any evidence relevant to Plaintiffs' claim is greatly outweighed by the burden involved at this point.

**C. 2013 IME spreadsheet**

Plaintiffs have requested that York turn over the IME data it complied in 2013 at the request of the City of Phoenix. Defendant argues that the document does not fall within any specific category of Plaintiffs' requested discovery materials. It also argues that it already provided the information found in the spreadsheet about the four doctors involved in Plaintiffs' workers' compensations claim and that information about other doctors York used for IMEs is irrelevant. The court previously found that IME reports authored by the four doctors involved in Plaintiffs' claims could be relevant for purposes of discovery because it could reveal statistical data related to how often the IME doctors involved in Plaintiffs' workers' compensation claims sided in favor of denial. Information about how often other doctors sided in favor of claim denial is much less relevant to the claims here. Plaintiffs argue that such information is relevant because it involves data regarding York's selection and use of doctors generally, which they assert is at the heart of their claim. While data as to how often all the doctors used for IMEs aided in claim denial could potentially be relevant to the case here, the 2013 spreadsheet does not contain information about *claim resolution*. That is, it does not give any details about whether the claims were accepted or denied, what benefits were paid, whether the IME favored the claimant, or any other details about the way a claim was resolved. It only provides claimant information, claim type, IME payment information, and the name of the doctor conducting the IME. The spreadsheet contains no information that could prove relevant to how and why York chose its IME doctors. In order for the spreadsheet

to lead to potentially relevant data, York would have to find the files for the 398 claims listed in the spreadsheet and then pull the IME reports for each of those files. Again, however, such an endeavor is too burdensome given that the relevance of IME reports authored by doctors not involved in Plaintiffs' claims is marginal.

**D. Summaries and reports related to claim resolution and payouts**

At docket 504, the court ordered York to search for and produce reports or summaries involving the resolution of claims or claim payouts. The order recognized that York did not generate any formal, regular reports for the City of Phoenix and that it simply provided data on an as needed basis, and that a search for such ad-hoc data reports or summaries might prove to be burdensome. However, the court noted that York did not attempt such a search or provide support for its assertion that it would be too difficult. York has now attempted to search for any responsive documents. The parties do not dispute that any ad-hoc reports or summaries exchanged by York employees would have been via email. Searching every email of every employee who worked in York's Phoenix office during the course of a four-year time span was broad, so the parties agreed on narrowing the search for any emails containing Excel spreadsheets. That narrowed the search to over 30,000 emails. York then agreed to search emails for specific terms. That also failed to sufficiently tailor the results, producing over 25,000 responsive emails. York asserts that it is too burdensome to continue searching. The court agrees. Plaintiffs' response brief provides no argument as to why York should continue to conduct time-intensive searches to retrieve information that may not even exist. York has shown that the burden here outweighs the potential value.

**E. Emails regarding adjuster performance**

At docket 344, the court ordered York to comply with Plaintiffs' RFP No. 15, which asked for documents relating to adjuster turnover and personnel analysis for the adjusters who worked on the City of Phoenix contract. It concluded that "[d]ocuments showing that adjusters who were more generous in approving claims were taken off the job or subject to some other negative personnel action, or that those who were less generous were provided with some benefit could clearly lead to the discovery of admissible evidence."[9] The court clarified that Plaintiffs' request was intended to discover records that might show that some adjusters were removed from work on the City contract while some were not, and it emphasized that York needed to turn over records which show favorable or unfavorable personnel decisions for adjusters. Pursuant to the order, York produced assessments, performance improvement plans, and documents maintained in York's personnel files related to adjusters Brian Heaton and Eileen Saige, the only adjusters removed from the City's account. It also provided the individual performance reviews of all the adjusters who handled the ten Plaintiffs' claims. Plaintiffs assert that Defendant has not complied with the order because it has not looked through employee emails to find any discussions about adjuster performance. York asserts that emails do not fall within the scope of the order and that, regardless, the task of restoring, searching, and "de-duping" results[10] would be too burdensome and cumulative given that they have already provided performance

---

[9]Doc. 3344 at p. 3.

[10]York refers to the process of removing duplicate emails as de-duping.

reviews, and there has not been any indication that continuing an arduous email search would result in the discovery of relevant evidence.

After due consideration, the court concludes that York has not fully complied with the order. The court indicated it should turn over documents related to adjuster performance. Defendant indicated that it turned over "performance assessments, performance improvement plans, and documents maintained in York's personnel file" for only two adjusters—the two removed from the City's account. It indicated that for the other adjusters who were directly involved with Plaintiffs' claims, it only turned over individual performance reviews. Defendants are directed to provide any performance assessments, performance improvement plans, or any other documents in the personnel files that relate to performance for all the adjusters directly involved with Plaintiffs' claims, not just the two who were removed from the City of Phoenix work. As noted by the court in its prior order, both unfavorable and favorable employment actions could be relevant. As for email correspondence, the court concludes that York has demonstrated that a search for all email correspondence regarding the adjusters involved in this case is unreasonably cumulative given that York will be providing the full set of relevant documents located in the personnel files and that such a search would be unduly burdensome given the likely benefit.

In their briefing on this discovery issue, the parties mention an email that York turned over during discovery because it was deemed relevant to the handling of Plaintiff Saylor's claim. In that email, there was some information about the performance of an adjuster, Ellen Saige. York redacted the portion of the email discussing Saige's performance before turning the email over to Plaintiffs. While the court concludes that

York does not need to engage in an extensive and resource-consuming email search to seek out emails regarding adjuster performance, it should turn over any emails known to discuss adjuster performance. An email that has already been located and that has information about an adjuster's performance could be relevant to Plaintiffs' claims and should be produced in an unredacted form. Clearly, there is no burden in locating the email since it is already in York's possession, and York fails to provide a reason as to why the redactions were necessary.[11]

**F. Emails regarding Plaintiffs' workers' compensation claims**

During the discovery process York agreed to conduct a search of certain York employees' emails accounts to locate any emails related to the Plaintiffs' specific workers' compensation claims. York provided emails from some of the employees who were directly involved in Plaintiffs' workers' compensation claims: Eileen Saige, Brian Heaton, Chris Garland, Andrea Lester, Linda Scott, Justin Frear, and Kathy McLeod. It has not, however, provided the relevant emails from the other adjusters and managers who were involved with Plaintiffs' workers' compensation claims: Eileen Price, Pat Sampson, Lesia Fejarang, Jane Benge, and Sandra Gonzales. Emails about Plaintiffs' workers' compensation claims from those directly involved are reasonably likely to lead to admissible evidence. York fails to explain why it searched the emails of some of the applicable adjusters and managers and not others, other than it was a time-consuming task. Clearly, as noted above, email searching is a time-consuming task, but the court must balance the burden with the potential relevance of the material sought. Any

---

[11]Any private personal identifying information such as social security number, birth date, or address should remain redacted.

burden in this particular instance is outweighed by the potential relevance given the employees' direct connection to Plaintiffs' claims. Moreover, the fact that York has already completed the search of many of the relevant employees' emails demonstrates that such a search is not an insurmountable task.

York did not search the emails of other employees who York claims have no direct connection to the case—Derick Lewis, Dianne Ward, Eddie Esparza, and Nicole Ciraolo. It is not clear what relevance these employees have to Plaintiffs' claims. York states that they were only marginally involved, and Plaintiffs do not otherwise explain why these particular employees would be likely to have relevant emails. The court concludes that the emails of these particular employees do not need to be searched.

**G. Financial documents**

Plaintiffs move to compel production of three categories of documents related to York's budget for the dedicated City of Phoenix office, including information related to expenses, revenues, and net profits. Plaintiffs argue that it is relevant to show York's financial incentives in denying workers' compensation claims. York's response as to why its budget for its Phoenix office is not relevant here is persuasive. Plaintiffs expert's analysis of York's revenue was derived from billing reviews of already accepted claims and not claims handling and, moreover, York earns a per-claim flat fee, regardless of whether a claim is denied, accepted, litigated, or goes unchallenged. Plaintiffs provide no reply in response to rebut York's arguments. Thus, the court finds no basis for concluding the expenses, revenues, and profits of York's Phoenix office could lead to admissible evidence regarding York's incentive to deny workers' compensation claims.

## V.  CONCLUSION

Based on the preceding discussion, Defendant's motions at dockets 554 and 557 are **GRANTED**.

Plaintiffs' motion at docket 607 is **GRANTED IN PART AND DENIED IN PART**. Defendant is directed to produce an unredacted version of the email discussing Eileen Saige's performance as directed in this order. Defendant is also directed to produce any emails related to Plaintiffs' workers compensation claims from the following employees: Eileen Price, Pat Sampson, Lesia Fejarang, Jane Benge, and Sandra Gonzales.  The motion is otherwise denied.

DATED this 3rd day of June 2015.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE